**UNITED STATES of America**

**v.**

**Clarence HICKS and Jean Jones.**

**Crim. No. 73–432.**

United States District Court,
E. D. Pennsylvania.

March 6, 1974.

Robert E. J. Curran, U. S. Atty., Gregory T. Magarity, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Martin B. Burman, Philadelphia, Pa., for Hicks.

Gordon Gelfond, Philadelphia, Pa., for Jones.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

The above two defendants were each charged in a single count of a two-count indictment. Clarence Hicks was charged in Count I with the unlawful distribution of 1.58 grams of heroin, a Schedule 1 narcotic drug controlled substance, in violation of 21 U.S.C. § 841. Hicks pleaded guilty to this offense on October 9, 1973. Defendant Jean Jones was charged in Count II of the indictment with aiding and abetting Hicks in the unlawful distribution of the heroin, in violation of 18 U.S.C. § 2. Following a

trial before a jury of twelve and two alternates, Jones was found guilty of the offense charged. This defendant has filed a motion for a new trial and for judgment of acquittal. Defendant's motion has no merit and, for this reason, will be denied.

The evidence presented at the trial of defendant Jean Jones, considered in the light most favorable to the Government, is as follows:

The Government's principal witness was Nadie Jones, a Philadelphia police officer assigned to the Federal Drug Enforcement Agency ("DEA").[1] Officer Jones testified that on March 21, 1973, he was working in an undercover capacity with an addict informant known as Willie Mack. The undercover agent and the informant formulated plans to visit an individual named "Truck" who was known by the informant to live in a first floor apartment located at 1513 North 20th Street in Philadelphia and to be a person from whom heroin could be purchased. The two individuals proceeded to the premises at 1513 North 20th Street for the purpose of purchasing heroin from "Truck." When they arrived at the location, Willie Mack went inside and the police officer waited outside on the front step. Inside the premises, Mack learned that "Truck" was not there, but Clarence Hicks and Jean Jones were there.[2] Mack indicated that he had a cousin outside who was interested in buying a bundle of heroin (25 small glassine packets). Hicks indicated a willingness to do business but informed Mack that he could sell only a half-bundle (12 or 13 packets). The informant then went outside and reported his conversation with Hicks to the police officer, who agreed to buy one-half bundle for $96.

---

1. At the time of the events described in the indictment, the Drug Enforcement Agency to which the officer was assigned was entitled the Office of Drug Abuse and Law Enforcement. Pursuant to Executive Order, the title of the agency was revised and is now known as the Drug Enforcement Agency.

2. Jean Jones and "Truck," whose real name was Andrew Jones, were married and lived together in the apartment at 1513 North 20th Street.

Hicks did not reside at 1513 North 20th Street and was, therefore, reluctant to deal with the policeman working undercover who was a stranger to him. Nevertheless, Hicks was willing to deal with Willie Mack who he did know. In the presence of Mack, the policeman gave Hicks $100 and then Hicks handed the $100 to Jean Jones, who had been standing in the next room throughout the course of the above-described events. Defendant Jones then left the adjoining room, which was the dining area, and went to another room in the apartment out of sight of the others. She returned in a few moments and handed a half-bundle of heroin, together with $4 change, to Hicks who, in turn, transferred both the heroin and the money to Mack. Mack and the policeman left the premises, whereupon the policeman conducted a field test on the substance purchased. The results of the field test prompted Officer Jones to seal and mark the evidence in such form so as to assure its security during custody and official testing at the Federal narcotics laboratory in New York.[3]

In addition to the testimony of Officer Jones, Willie Mack also testified as to the purchase of drugs that took place within the Jones' apartment. Mack's version of the facts substantially corroborated the testimony of the policeman.

The defendant Jean Jones then testified in her own behalf. In addition to a general denial of any involvement in the narcotics transaction, the defendant stated that she had never been arrested and that she lived with Andrew Jones, who had been referred to as "Truck." She testified that at the time of this incident her husband had been unemployed and that he was a student. Mrs. Jones indicated that her husband had been a part-time bartender and that he had done a variety of odd jobs. At the time of the incident, the defendant had two children and was pregnant with a third

child. The family was living on public assistance.

The defendant also offered as a witness on her behalf defendant Clarence Hicks, whose testimony was essentially in accord with the Government's view of the case, except that it was his position that he had sold some of his own heroin to Willie Mack that night and that Mrs. Jones had not furnished the heroin to him for sale. He did testify, however, that upon receiving $100 he did go to Mrs. Jones to make change, and she did give him the $4 which was given to Mack. Hicks was a man in his 50's and he indicated that he had been a drug addict for some 30 years. At the time that his testimony was offered, he was serving a sentence for his part in the current offense at Danbury Federal Penitentiary.

On rebuttal, the Government presented the testimony of William Mantell, an admitted drug addict. Mantell testified that he had visited the same apartment during the same period of time that this incident took place and had purchased heroin from the defendant Jean Jones. He further testified that on those occasions she left the living room and dining room area to go to another room to get the heroin that was returned by her to the living room or dining room for transfer to the purchaser. His testimony was offered by the Government in order to meet the unequivocal denial by the defendant that she had ever sold heroin to anyone and was not familiar with any such transaction on the premises.

### Discussion

■ There seems little dispute as to many of the important facts in the case. For example, there is no conflict between either of the parties' versions of the incident that on the night in question there was present in the apartment of the defendant Clarence Hicks, Willie

3. Counsel stipulated that if the Government chemist were called he would testify that the substance received from the defendant had been analyzed and found to be heroin.

Mack, and the policeman. The defendant's witness, Hicks, as well as the Government witnesses, were in agreement that a drug sale took place at that time, that the drug was heroin (Schedule 1 narcotic) that the quantity sold was a half-bundle, and that the price paid by Officer Jones was $96. The only real factual question presented at trial was whether Jean Jones knowingly participated in and facilitated the distribution of heroin by Clarence Hicks. This question was fully addressed by both sides, fairly argued by counsel, correctly considered in the Court's charge to the jury, and ultimately and clearly resolved by the jury's verdict of guilty. More than ample evidence was introduced from which the jury could conclude that Jean Jones was guilty beyond a reasonable doubt of the offense charged.

 Defendant argues that the trial court erred in permitting the Government rebuttal witness, William Mantell, to testify as to other criminal activity allegedly engaged in by the defendant Jean Jones. As previously discussed, Mantell testified that he had gone to the Jones apartment on several occasions and had purchased narcotics while there from Jean Jones. He testified that on such occasions the defendant left the living room area of the apartment, went to another room in the premises, and returned shortly thereafter with the heroin in her possession.

The law is well settled that the Government may not introduce evidence of other criminal acts of the accused, unless the evidence is substantially relevant for some other purpose than to show a propensity or disposition on the part of the defendant to commit a crime. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); United States v. Hines, 470 F.2d 225 (3rd Cir. 1972). The testimony of Mantell in respect to the purchase of drugs from Jean Jones during the same period of time in which this incident took place was introduced to substantiate the identification of Jean Jones as the individual who handed Hicks the half-bundle of heroin and the $4 change. Mantell's statement concerning the nature of the defendant's involvement in the sale of drugs to him also corroborated in detail the testimony of Willie Mack and Officer Jones as to the transaction charged in the indictment. See, United States v. Pittman, 439 F.2d 906, 909 (5th Cir. 1971); United States v. Lewis, 423 F.2d 457, 459 (8th Cir. 1970). Under the circumstances of this case, and especially in view of the defendant's repeated protestations of innocence, the testimony of William Mantell was properly admitted by the trial court.

 Defendant further contends that the Court erred in not permitting a copy of the undercover policeman's case report to go to the jury. The case report consisted of a summary of the events in question placed by the policeman on a departmental form. It had been available to defense counsel prior to cross-examination of the policeman and had been used by defense counsel in that cross-examination. The policeman referred to it on occasion and was required by defense counsel to explain certain references in the report. The defendant has contended that certain portions of the report referred to other matters that the policeman had not testified to and, for this reason, the jury should see the report so that it could thereby judge the policeman's credibility. The fact of the matter is that the items that defense counsel would point to in this regard constituted subject matter that was never inquired of by defense counsel, either on direct or cross-examination and, accordingly, the Court concluded that it would not be a true test of the witness' credibility because he had not spoken to those matters nor had he been asked to. The Court also concluded that the usefulness of such a report rests in its value as a tool of effective cross-examination and that defendant's counsel had used the report for that purpose to the fullest extent that he wished to. Whether documents or other evidentiary exhibits properly admitted should or should

not accompany the jury to the jury room is a discretionary matter for the trial court. United States v. Stone, 472 F.2d 909, 914 (5th Cir. 1973); Dallago v. United States, 138 U.S.App.D.C. 276, 427 F.2d 546, 553 (1969); McCormick on Evidence § 217, p. 539 (1972). Based on the facts of this case, the Court properly decided that the case report should not be taken by the jury for consideration during deliberations.

None of the other grounds advanced by the defendant warrant the granting of any of the defendant's motions and, accordingly, the same will be denied.[4]

---

4. The opinion in this matter is based on the Court's recollection of the testimony offered and on bench notes taken during the course of the trial. As of the writing of this opinion, no transcript has been prepared.