390 A.2d 183

**COMMONWEALTH of Pennsylvania**

v.

**Manfred HUDE, Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 1977.

Decided July 12, 1978.

440

Thomas F. Traud, Jr., Ronald E. Corkery, Allentown, with them William H. Platt, for appellant.

Scott Oberholtzer, Assistant District Attorney, Allentown, with him Stuart T. Shmooker, Assistant District Attorney, Allentown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court improperly permitted the introduction of evidence of crimes unrelated to those listed in the indictments. We agree and, therefore, would grant appellant a new trial.[1]

On March 7, 1975, appellant was arrested on multiple charges of possessing and delivering marijuana.[2] The indict-

1. Appellant also contends that (1) his conviction violated the Double Jeopardy clauses of the Pennsylvania and United States Constitutions and Pa.R.Crim.P. 110; 19 P.S. Appendix, (2) the lower court erroneously denied appellant the opportunity to present two witnesses, and (3) the lower court improperly instructed the jury that a date specified in the indictment need not be the date established by the testimony. Because of the disposition we reach, we do not discuss these contentions.

2. The Controlled Substance, Drug, Device and Cosmetic Act, April 14, 1972, P.L. 233, no. 64, § 13, imd. effective. As amended, Oct. 26, 1972, P.L. 1048, no. 263, § 1, imd. effective; Dec. 30, 1974, P.L. 1041, no. 340, § 1, imd. effective; 35 P.S. § 780–113.

ments filed by the Commonwealth specified that appellant sold drugs to a high school student on a number of designated occasions ranging from about November 30, 1974, to about January 1, 1975. At a jury trial on September 19 and 21, 1975, the Commonwealth's primary witness, a sixteen year old boy, testified as follows: appellant and he consumated a series of marijuana transactions from the end of October, 1974, through January, 1975, at Dempsey's Diner in Allentown, Lehigh County. Appellant would drive to these meetings in a white Datsun station wagon; some exchanges occurred inside this station wagon. The witness admitted that he had recently pleaded guilty to selling drugs to his high school classmates.

Appellant testified that he never sold his accuser marijuana, despite the boy's repeated offers to buy from October, 1974, through January, 1975. He admitted meeting the sixteen year old boy at Dempsey's Diner on one occasion on October, 1974, but stated that all other conversations from this date through January, 1975, occurred over the telephone. He also testified that he had been at his parent's home watching television on two of the particular dates named in the indictments and bill of particulars. Finally, he testified that the white Datsun station wagon had been in a repair shop from October 31, 1974, to January 14, 1975.[3]

On cross-examination, the prosecutor, over objections, asked appellant if, in December, 1973, or January, 1974, he had offered to sell marijuana to a courtroom spectator, one Donald Batz. Appellee denied that he had ever met Batz before. The Commonwealth subsequently called Batz on rebuttal; in an offer of proof, the prosecutor asserted that appellant had offered to sell Batz marijuana in March, 1974. Appellant's counsel objected because such testimony would be remote and would contravene the rule against introducing evidence of "other crimes." The prosecutor responded that he did not seek to introduce the evidence as an exception to the "other crimes" rule; instead, he argued that the evidence impugned appellant's credibility because appellant

3. The owner of the repair shop corroborated this assertion.

had not objected to the initial inquiry as to previous offers to sell and had denied making any such offers.[4] The lower court overruled the objection, and Batz testified that he was an undercover narcotics agent and that in the second week of March, 1974, appellant, while working at the Dixon Street Saloon in Allentown, offered to sell him a pound of marijuana for $425. Because of the steep price, negotiations collapsed. On September 21, 1975, the jury convicted appellant of all charges, and on October 28, 1976, after denying post-verdict motions, the lower court imposed a five to ten year term of imprisonment. This appeal followed.

Appellant contends that the Commonwealth's cross-examination and Batz's rebuttal testimony improperly introduced "other crimes" evidence. In *Commonwealth v. Bradley*, 243 Pa.Super. 208, 212, 364 A.2d 944, 945–46 (1976), our Court recently reiterated the rule against introduction of evidence of other crimes allegedly perpetrated by a defendant: " 'One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime. This is because the fact that a person has committed one offense is not proof that he has committed another and because the effect of such testimony upon a jury is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant.' *Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955). See also *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973); *Commonwealth v. Boulden*, 179 Pa.Super. 328, 116 A.2d 867 (1955); *See, generally, McCormick on Evidence*, § 190 at 447–454 (2nd Ed. 1972). Special circumstances justifying exceptions to the general rule exist when the evidence of other crimes 'tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the

---

4. In fact, as noted above, appellant's counsel had objected when the Commonwealth sought to cross-examine appellant about previous offers to sell marijuana.

others; or (5) to establish the identity [5] of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.' *Commonwealth v. Peterson, supra*, 453 Pa. at 197–198, 307 A.2d 269." [6]

In the instant case, we believe that none of the traditional exceptions to the "other crimes" rule applies and that evidence of appellant's alleged offer to sell marijuana to narcotics agent Batz should have been excluded. The 8½ month hiatus between the alleged offer to sell and the first of the sales charged in the indictment dispels any claim that the distinct transactions were all part of a continuing scheme, plan, or conspiracy. *Commonwealth v. Fortune, supra*. The Commonwealth makes no attempt to demonstrate that the offer to sell and the actual sales involved a *modus operandi* so unique as to be tantamount to appellant's signature; rather, these alleged crimes have no distinctive elements

5. In *McCormick*, supra at 448, the commentator states that the need to prove identity alone is usually not sufficient to permit the introduction into evidence of other crimes. Instead, evidence of other crimes establishing a defendant's identity is generally admitted when it is interrelated with one of the other exceptions specified above. The exceptions most frequently resorted to for this purpose are motive, a common scheme or plan, and an identical *modus operandi*. See also *Commonwealth v. Patterson*, 247 Pa.Super. 199, 372 A.2d 7 (Filed March 31, 1977) (Dissenting opinion by HOFFMAN, J. in which JACOBS and SPAETH, JJ. joined), allocatur granted.

6. Some Pennsylvania cases have articulated a more streamlined version of the special circumstances justifying exceptions to the general rule against evidence of other crimes. In *Commonwealth v. Fortune*, 464 Pa. 367, 373, 346 A.2d 783, 786 (1975), the Supreme Court stated: "[E]vidence of other crimes *is* admissible when it tends to prove a common *scheme, plan or design embracing the commission* of two or more crimes so related to each other that proof of one tends to prove the others or establish the identity of the person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." (Emphasis in original) *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783, 786 (1975); See also, *Commonwealth v. Foose*, 441 Pa. 173, 272 A.2d 452 (1971); *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955).

separating them from ordinary drug transactions and locking them together into a chain. *Commonwealth v. Fortune*, supra; *McCormick*, supra at 449. While the Commonwealth asserts that Batz's testimony demonstrated appellant's awareness of the substance of marijuana and thus negated a defense predicated on mistake, accident, or lack of intent to sell a controlled substance, appellant freely admitted smoking marijuana on occasion and did not base his defense in any way on mistake or entrapment. Finally, the Commonwealth asserts that the alleged prior offer establishes that monetary gain motivated the sales charged in the indictments. However, in *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214, 218–19 (1976), our Supreme Court stated that "evidence of a distinct crime, even if relevant to motive, 'must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.'" *See also Commonwealth v. Schwartz*, 445 Pa. 515, 285 A.2d 154 (1971). Here, while monetary gain may have been a common motive between the alleged prior offer to sell and the subsequent alleged sales, there is no causal connection between the two crimes and the occurrence of the first crime sheds no light on why or how the subsequent crimes charged occurred. In short, the alleged March, 1974 offer to sell does not assist the jury in its determination of whether the Commonwealth has proven the elements of the crime of selling marijuana between November 30, 1974, and January, 1975. The only relevance of the prior offer is "to ground the [impermissible] inference that accused is a bad man and hence probably committed this crime." *McCormick*, supra at 453. *See also Commonwealth v. Bradley*, supra.

Even if one of the traditional exceptions could be invoked, we would still hold that the lower court abused it discretion in admitting evidence of the alleged prior offer to sell marijuana. In *McCormick*, supra, the commentator chastises judges who end all inquiry once they decide whether or not a particular exception to the "other crimes" rule applies. The commentator warns that this practice of "pigeonholing"

may cause trial and appellate judges to ". . . lose sight of the underlying policy of protecting the accused against unfair prejudice. The policy may evaporate through the interstices of the classification." *McCormick*, supra, at 453. Accordingly the commentator recommends that courts balance ". . . on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, and the strength or weakness of their other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility. [supra] at 453." In *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186, 191 n. 11 (1977), our Supreme Court recently endorsed the application of this balancing process, even though the Commonwealth had established the independent relevancy of the "other crimes" evidence through application of the traditional exceptions. *See also Commonwealth v. Patterson*, supra. (Dissenting Opinion of HOFFMAN, J.); *Commonwealth v. Bradley*, supra. Thus, even assuming independent relevancy under a traditional exception, we should still determine if the policies behind the "other crimes" rule mandate exclusion of evidence of the alleged prior offer to sell marijuana.

In the instant case, we believe that the balancing process operates to exclude evidence of the March, 1974 offer to sell. First, the Commonwealth has little need to produce evidence of the prior offer to sell because it can rely upon the direct testimony of a participant in the charged drug transactions to inculpate appellant. *Commonwealth v. Bruno*, 215 Pa.Super. 407, 258 A.2d 666 (1969). Second, the evidence that the accused actually attempted to sell marijuana to undercover agent Batz is weak; the Commonwealth did not secure a conviction or even arrest appellant on this charge. *Commonwealth v. Bradley*, supra. Third, the 8½ month gap between the March, 1974 offer to sell and the November 30, 1974-January, 1975 sales makes evidence of the "other crime" remote and of little help in assessing appellant's

culpability for subsequently selling drugs. Against these tenuous Commonwealth interests, we must weigh appellant's substantial interest in not being convicted because he is a "bad man." Most importantly, appellant has a strong interest in having the jury focus its undivided attention on evidence of his participation in the charged drug transactions. Evidence of the prior offer to sell unfairly diverts the jury's attention to a remote and wholly collateral incident and deprives appellant of an unclouded determination of his credibility versus that of his accuser. Moreover, Batz's testimony required appellant to alter his defense to meet charges of which he had no notice. *Commonwealth v. Fortune*, supra; *Commonwealth v. Bradley*, supra; *Commonwealth v. Boulden*, supra. Balancing the factors listed in *McCormick*, supra, we believe that the lower court abused its discretion in admitting evidence of the prior offer to sell.

Finally, even if evidence of the "other crime" was admissible, the lower court erred in permitting the Commonwealth to ask appellant on cross-examination if he had made a prior offer to sell marijuana to undercover agent Batz. The Act of March 15, 1911, P.L. 20, § 1; 19 P.S. § 711 provides:

"Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—

"One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or,

"Two. He shall have testified at such trial against a co-defendant, charged with the same offense."

In the instant case, the prosecutor did ask appellant on cross-examination questions which tended to show that ap-

pellant had attempted to sell marijuana on previous occasions. Appellant had not questioned either prosecution or defense witnesses about his good reputation or character nor had he testified against a co-defendant charged with the same offense. Accordingly, the Commonwealth's initial questions violated 19 P.S. § 711.

We also reject the Commonwealth's rationale, proffered at trial,[7] that Batz's testimony constituted legitimate impeachment because on cross-examination, appellant had denied making a prior offer to sell Batz marijuana. Appellant objected, unsuccessfully, to the Commonwealth's cross-examination on this subject. The Commonwealth then received an answer to which it was not entitled under 19 P.S. § 711. To allow subsequent impeachment on rebuttal because appellant responded negatively to an impermissible and challenged question would eviscerate the spirit of 19 P.S. § 711 and would sanction the art of bootstrapping.[8]

Because we believe that the lower court improperly allowed the Commonwealth to cross-examine appellant and to introduce testimony concerning a crime unrelated to the crimes charged in the indictment, we grant appellant a new trial.

Judgments of sentence vacated and appellant granted a new trial.

JACOBS, President Judge, and CERCONE and SPAETH, JJ., join in this opinion.

VAN der VOORT, J., filed a dissenting opinion, in which PRICE, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

---

**7.** The Commonwealth does not press this contention before us.

**8.** We also note that the Commonwealth may not introduce evidence of the alleged prior offer to sell marijuana in order to impeach appellant's credibility in general unless, at a minimum, the crime involved dishonesty or false statement and the Commonwealth had already secured a conviction. *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973).

VAN der VOORT, Judge, dissenting:

I would affirm the judgment of conviction entered by the court below and for that reason respectively dissent from the decision to order a new trial.

Appellant was tried before a jury and convicted on seven separate criminal indictments charging the appellant with possession and delivery of marijuana on or about seven different dates between November, 1974 and January, 1975. He was acquitted on an eighth such charge. The Commonwealth's evidence consisted of the testimony of one Barry Hagemus, a high school student, who testified that on these seven occasions the appellant sold him varying amounts of marijuana which he resold to students in various high schools of the city. Appellant was sentenced to a cumulative term of imprisonment of five to ten years.

In each instance, Barry Hagemus related that he met the appellant by prearrangement in the parking lot adjacent to Dempsey's Diner in Allentown at approximately 7:00 P.M. On each occasion the appellant gave marijuana to Hagemus and received money in return. The amounts of marijuana and money varied from transaction to transaction.

At the previous term of the trial court, appellant had been tried on three other indictments charging possession and delivery of marijuana to Barry Hagemus on three earlier occasions and on a fourth indictment charging corruption of the morals of a minor. After a jury trial, the appellant was acquitted on all counts.

In both trials the testimony of Barry Hagemus was similar as to the place of the transactions, the names of the participants and the type of drug purchased. However, the dates of the transactions to which he testified at the second trial were different than those with respect to which appellant had been charged at the first trial. Also the amount of drug sold and money received varied from sale to sale.

At the second trial the appellant denied having made any sales of marijuana to Barry Hagemus, although he testified that Hagemus repeatedly sought to buy marijuana from

him. He also produced a garage man who testified that the vehicle allegedly used by the appellant when he went to meet Hagemus in the parking lot at Dempsey's Diner was on the witness's lot for repairs and then held for payment of charges for a 2½ month period, November 1—January 15. It was within this time period that seven of the eight marijuana sales were allegedly made. The commonwealth produced some evidence in contradiction of this alibi.

Appellant's principal argument on appeal was that his acquittal on the first trial precluded the possibility of conviction on the second. He relied on Section 110 of Crimes Code, 18 Pa.C.S. § 110, collateral estoppel, and a claim of double jeopardy under both the state and federal constitutions.

Appellant's contention that Section 110 of the Crimes Code requires that all indictments be tried at a single trial is without merit since he acquiesced in the decision to try the indictments in two trials. Appellant concedes in his brief that "it is true that defense counsel was aware of all the charges at the first trial and said nothing to oppose the District Attorney's selection of indictments". More than that, the court en banc states in its opinion:

> "Here, counsel for the defendant, who represented Hude at both trials, admitted at oral argument that prior to the first trial he was aware of the existence of the indictments tried in the instant case and of the defendant's right to have all the indictments tried at once, yet for purposes of trial strategy chose not to move for consolidation."

We recently addressed this precise issue in *Commonwealth v. Green,* 232 Pa.Super. 134, 142–143, 145, 335 A.2d 493 (1975) where we held with respect to a defendant's rights under Section 110—

> "It is apparent that a defendant who is aware of the charges against him can thus waive his statutory right to have them all brought in a single prosecution. If he himself requests separate trials and obtains a court order to that effect, or if he knowingly acquiesces in what appears to be an advantageous separation, he cannot later raise an objection claiming the statutory protection from

multiple trials. The intent of the statute to avoid magnifying an incident of criminal behavior out of proportion, both in terms of hardship to the individual and prejudice to his case, is not lost when an informed defendant chooses of his own to go the route of multiple trials." (pp. 142–3, 335 A.2d p. 497)

.     .     .     .     .

"Perhaps counsel saw in the extra trial some advantage for his client, an extra opportunity to be heard and maybe find a more sympathetic forum. Perhaps he merely foresaw an opportunity to gain immunity from the remaining charges by encouraging the separation. In any event, by misleading the hearing judge and the Commonwealth with his silence, and by giving the appearance of consent to the arrangement, the appellee has waived his right to claim harassment by multiple prosecutions. There can be no unjust contravention of the statute intended to protect the accused when a defendant is denied its use as a shield against a prosecution which he himself invited by his own designs. We hold that the protection of the statute does not extend to the appellee who waived his rights under it by consenting to the additional prosecution." (p. 145, 335 A.2d p. 498)

Appellant cannot have it both ways. His counsel, with full knowledge of all the facts, acquiesced in the decision that there be two trials and he has necessarily waived his right at this late date to ask for a single trial.

The argument that appellant has been subjected to double jeopardy is equally without substance. While each indictment was for the sale and delivery of marijuana by appellant to Hagemus at about 7:00 P.M. in the parking lot adjacent to Dempsey's Diner, the dates of each transaction, the amount sold and the money received were different. Each was a completed transaction in itself. The crimes alleged in the eight indictments in the second trial took place on different days from those with respect to which the appellant had previously been acquitted. Consequently, the ultimate issue in each indictment was different. The issue in each instance was whether the appellant made a sale of

marijuana on that particular occasion. Acquittal of the charge in one indictment does not require acquittal under the others, nor does an acquittal preclude later trial on subsequent sales: *Commonwealth v. Peregoy,* 226 Pa.Super. 330, 313 A.2d 301 (1973). The Commonwealth is entitled to its day in court on each sale.

Appellant argues that the jury in the instant case was collaterally estopped from believing Hagemus because the jury in the first trial apparently did not believe him. This contention will not stand analysis. To begin with, there is no basis for the conclusion that the acquittals in the first trial were based on a disbelief in Hagemus. But even assuming that the first jury did not believe him with respect to the earlier marijuana sales there at issue, there would be no reason to assume that same jury or a second jury might not accept his testimony with respect to subsequent sales. A jury could believe that he was telling the truth as to a marijuana sale on one date but not on another. Indeed, by appellant's logic, the acquittal of appellant on the final indictment in the instant case should have collaterally estopped the jury from accepting Hagemus' testimony and finding him guilty on the other seven.

The indictments in both trials involved different acts committed on different dates. Consequently, there were no common facts and collateral estoppel could have no application. The essence of collateral estoppel is to preclude a party from re-litigating issues on which he has already had his day in court and lost. See *Commonwealth v. Studebaker,* 240 Pa.Super. 37, 52–53, 362 A.2d 336 (1976). The Commonwealth had not had its day in court on the offenses charged in the current indictments until the second trial and, consequently, could not be estopped by conclusions as to earlier sales reached by the jury in the first trial.

We reached a similar decision in *Commonwealth v. Peluso,* 240 Pa.Super. 330, 334–5, 361 A.2d 852 (1976). In that case the defendant allegedly stole seven rifles in the course of a burglary. He was tried and acquitted with respect to the theft of one rifle. At a second trial, he was tried and convicted of stealing two more of the rifles. He challenged

the judgment on several grounds, including double jeopardy and collateral estoppel. We said on the latter issue:

"Collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1971). However, the facts presented at the first trial connected appellant only with receiving the stolen Weatherby on January 27, 1972. The issue of ultimate fact determined at that trial had no reference to the two other rifles appellant was later accused of receiving." (pp. 334–5, 361 A.2d p. 855)

The appellant's secondary argument, which the majority of this court has accepted as the basis for a new trial, is that rebuttal testimony by the Commonwealth of an offer by appellant to sell marijuana to a third party some 7½ months earlier constituted inadmissible evidence of a prior crime.

The disputed rebuttal testimony was received under the following circumstances. Appellant had denied selling marijuana to Hagemus at any time. On cross examination he had testified, without objection, that while he was employed at the Dixon Street Saloon he had not sold nor offered to sell marijuana to anyone. Appellant was then asked to look at Donald Batts, a Commonwealth narcotics agent, who was in the courtroom. Appellant then denied that he had ever seen the officer before or had ever offered to sell him marijuana.

In rebuttal to appellant's denials, the Commonwealth called Officer Batts who testified that in March, 1974, appellant had offered to sell him a pound of marijuana for $425 but that the transaction was not completed because the price was considered too high and the appellant refused to sell a smaller quantity. The appellant justified the asking price with the explanation that he was selling Columbian marijuana, a superior product without stems or seeds.

This rebuttal evidence was offered not to prove a prior crime but to contradict appellant's testimony. It went to

the credibility of appellant for truthfulness under oath for he had previously testified, without objection, that he had never supplied nor sold marijuana to anyone. The fact that the offer had been made 7½ months before the first date alleged in the indictments did not destroy the probative value of the testimony for it was not offered to establish a chain of sales leading to the sales to Hagemus. The Commonwealth would have been at an unfair disadvantage had it not been allowed to rebut appellant's testimony that he had never sold marijuana to anyone at any time.

Nevertheless, the majority opinion rules this to be improper evidence of a prior crime and unduly prejudicial to the appellant. It might be noted that the testimony did not disclose the commission of a crime because the appellant's offer to sell marijuana to Officer Batts stopped short of a sale. As a general rule, evidence of a prior crime may not be introduced against a defendant, but the rule is not absolute. Such evidence may be received if it tends to prove a criminal element such as motive, intent, knowledge, identity, plan, part of a chain of circumstances or ability to commit a crime: *Commonwealth v. Burdell,* 380 Pa. 43, 47, 110 A.2d 193 (1955); *Commonwealth v. Gomino,* 200 Pa.Super. 160, 173, 188 A.2d 784 (1963). While paying lip service to this principle, the majority of the court conclude that Officer Batts should not have been permitted to testify inasmuch as his testimony concerned commission of a crime other than those for which the appellant is on trial.

In response to this conclusion, we note that evidence of distinct, illegal drug activity has been held admissible as tending to prove criminal elements relating to other illegal drug activity: *Commonwealth v. Gomino, supra,* 200 Pa.Super. 160, 188 A.2d 784; *U. S. v. Williams,* 367 F.Supp. 768 (E.D.Pa., 1973); affirmed 500 F.2d 1401 (3rd Cir. 1974); *U. S. v. Daniels,* 64 F.R.D. 397 (E.D.Pa., 1974); and *U. S. v. Hicks,* 373 F.Supp. 515 (E.D.Pa., 1974). This evidence becomes especially relevant when the accused has repeatedly denied his innocence of the crimes charged: *Williams, supra,* and *Hicks, supra.* The court in *U. S. v. Stirone,* 262 F.2d

571, 576 (3rd Cir. 1959), stated that ". . . evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." By that test, the rebuttal evidence of Officer Batts was appropriate.

The testimony of Batts is logically connected to the criminal charges against appellant. It supports the Commonwealth's theory that appellant was engaged actively in the sale of marijuana and that this involvement extended over a substantial period of time. The Batts' testimony highlights appellant's ability to sell marijuana, demonstrates his knowledge and awareness of the substance of marijuana such as the superior qualities of the Columbian variety, and reveals appellant's motivation in dealing in marijuana as monetary gain.

The testimony of Donald Batts concerning his dealings with appellant logically interrelates with that given by Barry Hagemus, the later purchaser. That the events are separated by a period of approximately 7½ months does not diminish in any way the direct bearing that the testimony of the prior event has in establishing the criminal elements of identity, motive, knowledge, intent or common plan or scheme involved in the latter event. The testimony of the prior dealing with Donald Batts supports and establishes the criminal elements of appellant's dealings with Hagemus.

The Batts' testimony fell well within the parameters which define admissible limits of other criminal activity. The admissibility of such evidence is determined by whether it tends to prove any of the criminal elements of identity, motive, intent, knowledge or common plan or scheme as they bear on the criminal charges pending against the appellant. As long as the probative value of the proffered evidence outweighs any prejudicial effect and as long as the proffered evidence is logically relevant to the issues involved in the pending criminal charges, it is relevant and should be received.

Appellant's remaining arguments are ingenious but without substance. He complains that the trial judge refused to allow him to call a representative from the office of the

Clerk of Courts to testify to the dates in the Bill of Particulars filed by the Commonwealth. This would have been offered to impeach Hagemus whose testimony varied slightly from the Bill of Particulars as to some of the dates. A Bill of Particulars is not evidence of itself, it is merely a statement of what the government will or will not claim: *U. S. v. Murray*, 297 F.2d 812 (2d Cir. 1962). Hence the introduction of the document, had it been permitted, would have been lacking in evidentiary impact. These discrepancies, if any, could have been argued to the jury without the necessity of calling a witness. But however presented, the dates in the Bill of Particulars would not have impeached or discredited Hagemus for there was no mention in appellant's offer of proof that the Bill of Particulars had been signed or otherwise sponsored by Hagemus.

Appellant further contends that the trial court erred in not permitting him to take the testimony of the stenographer at the first trial. She would have been asked to read the transcript of her notes to show that Barry Hagemus testified at the earlier trial as to having had hallucinations. This was a collateral and irrelevant issue at best. Furthermore, as the trial judge found, there was no substantial difference between the witness's testimony on the subject at the first and second trials. His testimony at the first trial concerning hallucinations did not refer to any particular period of time. He testified at the second trial that he had "a bad time" on LSD and "that means I was pretty far gone". He explained that LSD was the only drug he had ever taken which caused hallucinations but that he had not taken any of that drug since June of 1974, approximately six months prior to his first purchase of marijuana from the appellant. The court concluded quite properly that his testimony on the subject, a rather collateral issue at best, did not differ substantially from one trial to the other.

Finally, appellant objects to the charge of the court that the Commonwealth was not bound by the dates set forth in the indictments. The wording of each indictment is "on or about" a certain date. Appellant concedes the general rule that the Commonwealth is not bound by the dates laid in the

bill of indictments but can show any dates within the statutory period and prior to the finding of the indictments except 'where time is of the essence of the offense as in the instance of an alibi defense: *Commonwealth v. Peluso*, 240 Pa.Super. 330, 361 A.2d 852 (1976).

There is no showing of such prejudice in this case. The basic premise of the appellant's defense in addition to a general denial that any of the transactions took place, was the alibi that the car in which he allegedly drove to the meetings with Hagemus was in a repair shop and unavailable to him from November 1, 1974, until the middle of January, 1975. The minor variance in dates did not weaken this alibi because all but one of them were within the time frame of the alibi. Ironically, the only indictment on which appellant was acquitted was the one which occurred after mid January, 1975, when appellant's car was allegedly returned to him.

This case was hard fought and well tried by experienced counsel before an able judge. The rulings under review were all made within established benchmarks. I would affirm the judgment of the trial court.

PRICE, J., joins in this opinion.