**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAHSEUL MAVEN | |
| Appellant | No. 2931 EDA 2016 |

Appeal from the Judgment of Sentence entered April 22, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0009780-2013

BEFORE:  BOWES, STABILE, and McLAUGHLIN, JJ.

DISSENTING MEMORANDUM BY STABILE, J.:          **FILED JUNE 25, 2019**

The learned Majority concludes that the trial court did not abuse its discretion in permitting the Commonwealth to introduce, for purposes of proving Appellant's identity and his intent and knowledge to commit possession with intent to deliver ("PWID") crack cocaine, evidence of prison calls Appellant made more than two years after he was arrested and charged with PWID.  I respectfully disagree with the Majority's conclusion.  My review of the record, as set forth below, reveals that the Commonwealth never sought to introduce the prison recordings under Pa.R.E. 404(b) for purposes of establishing Appellant's identity.  Rather, the Commonwealth rested its introduction of the prison recordings solely on the intent and knowledge exception to Rule 404(b)(1).  However, unlike the Majority and consistent with **Commonwealth v. Ross**, 57 A.3d 85 (Pa. Super. 2012) (*en banc*), **appeal**

*denied*, 72 A.3d 603 (Pa. 2013) and **Commonwealth v. Boczkowski**, 846 A.2d 75 (Pa. 2004), I cannot conclude that the Commonwealth satisfied its burden under Rule 404(b) as Appellant never contested or challenged any elements of the underlying crime, *i.e.*, PWID. Accordingly, I would vacate and remand this matter to the trial court for a new trial.

I confine my analysis to the issue of the admissibility of the 2015 prison recordings under Rule 404(b) as I find it to be dispositive. Given this discrete issue, I also find it unnecessary to recount the full background of this case.

Briefly, Appellant was charged with, *inter alia*, PWID following controlled purchases of crack cocaine by a confidential informant ("CI"). On April 13, 2016, prior to the start of Appellant's jury trial, Appellant's trial counsel orally raised a motion *in limine* to preclude the Commonwealth from introducing and admitting into evidence recordings of two phone calls Appellant made in 2015 after his arrest while incarcerated. Trial counsel explained that Appellant made the prison calls on November 25 and 26, 2015

> when he was taken back into custody in th[is] case. The allegations in the case arise from July ninth, and tenth, eleventh and twelfth of 2013. The statements in the prison phone calls . . . are get all the drugs out of the house on one day and on the second day it is there's cocaine under the bed, get that out of the house[.]
>
>  . . . .
>
> [T]hat information coming two years and several months, those statements coming two years and several months later are basically another bad act. They are not discussing the case at hand and whether [Appellant] . . . was guilty or not guilty, did or did not do acts that constitute the crimes charged. It's propensity evidence. It is only relevant to show or would only show that

- 2 -

[Appellant] is the kind of person that has drugs around and therefore two years plus prior you can convict [Appellant] for selling drugs because two years later [Appellant] says make sure that there's no drugs in the house, make sure there's no cocaine under the bed.  So it's not relevant.  It is in fact prejudicial.

N.T. Hearing, 4/13/16, at 7-8.  In response, the Commonwealth argued:

[O]ne of the elements that [the trial court] will be instructing the jury on is **knowledge and intent to possess** the item and, in fact, knowledge that it is a controlled substance.  This evidence would be used to show that he does have knowledge and he does exercise control over what he in the prison tapes describes as not only drugs but also specifically is cocaine, the narcotic in this case.  So it is relevant to that case to show that his knowledge and his intent to possess controlled substances is in his own words, that he has that knowledge, that he has that intent.  So therefore, it is relevant to the case.  It is relevant to this crime.  It is relevant to the specific charge.

*Id.* at 9 (emphasis added).  Following a hearing, the trial court denied the motion without specifying the reason for the denial.[1]

At trial, the Commonwealth presented the testimony of three Philadelphia Police Officers.  The officers were Officer Jason Yerges, who, as a member of the narcotics field unit, worked with the CI and observed the controlled purchases of crack cocaine on July 9 and 10, 2013 and identified Appellant as the seller of the crack cocaine at the Property;  Officer Carlos Buitrago, who, as a member of the narcotics field unit, executed a search warrant at the Property on July 11, 2013 and recovered a handwritten letter addressed to Appellant albeit bearing a different street address from that of

_____

[1] I observe that Commonwealth failed to file a Pa.R.E. 404(b)(3) notice informing Appellant of its intention to introduce evidence of subsequent bad acts at trial regarding the 2015 prison recordings.

- 3 -

the Property; and Officer Michael Guinter, who arrested Appellant on July 12, 2013 one and one-half blocks away from the Property. In addition, the Commonwealth introduced via stipulation the recordings of the November 25 and 26, 2015 phone calls that Appellant made while in prison. N.T. Trial, 4/14/16, at 144-45. The Commonwealth thereafter played the complete recordings of the prison calls for the jury; however, it failed to ensure their transcription for the record. Upon conclusion, the trial court allowed their admission into evidence.[2] *Id.* at 146.

Appellant's principal defense at trial was that he was not the individual who sold crack cocaine to the CI on July 9 and 10, 2013.[3] N.T. Trial, 4/14/16, at 148; N.T. Trial, 4/15/16, at 8-9, 12-13, 22-25. During closing, Appellant's trial counsel argued in part:

> And the District Attorney is gonna play a snippet from a phone call from the jail – there were two that we heard yesterday – where my client hoped to get out on house arrest at Thanksgiving last year. Thanksgiving is that holiday where you spend time with your family and you know your family. They're all types, right? When you're surrounded by drugs, it really comes as no surprise

---

[2] The trial transcripts reveal that Appellant's counsel failed to request a limiting instruction, and the trial court failed to issue one on its own initiative, with respect to the introduction and admission of subsequent bad acts evidence. *See* Pa.R.E. 105 ("If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly. The court may also do so on its own initiative.").

[3] My record review indicates that Appellant did not raise a misidentification defense at the hearing on the *in limine* motion at issue.

- 4 -

that you talk about getting rid of drugs so you don't get into any more trouble.

So two years after the arrest in this case from jail he talks about drugs, two times for a few seconds, pointedly in the second conversation. There's coke under the bed, there's bags in the back yard. Don't let my chance of house arrest get screwed up by those drugs.

Does the mention of that prove that on July ninth and tenth [Appellant] sold drugs to a [CI] two years earlier? Because those are the allegations in this case and that's what you're here to decide. Or did those snippets of conversation create prejudice, suspicion, inflame passion? Because those are the things you do not rely on when you are rendering a verdict in a criminal case. It's just casting dirt on [Appellant] to make him look bad so that perhaps you won't be convinced by the evidence or the lack of evidence in this case and you'll convict him because he seems like a bad guy.

The judge will define the crime of [PWID] and she'll define the concept of circumstantial evidence for you. She'll define what makes for possession under the law. Nowhere in any of those definitions will you hear any idea that covers a statement made two years later under different circumstances that makes for proof. It would be proof if he had said they're looking for crack, not cocaine, crack. There's crack in blue packets, get rid of that. No. That's not what's said. In three years' time they've got two little snippets that talk about drugs, and they're going to ask you to disregard every other failure of the evidence in this case because of those two little snippets. Never mind the rest of the almost three years' time in which there is no other mention of drugs or bags or beds or anything.

N.T. Trial, 4/15/16, at 29-31. The Commonwealth wrapped up its closing argument by playing a snippet of the prison phone call for the jury.

[Commonwealth:] . . . . Just in case you forgot what it said, let me play it again so you can hear him say what he was worried about them finding.

[Audio recoding played.]

[Commonwealth:] "I put the coke under the bed. Make sure it's not there." That's not being in and around people that have it.

- 5 -

"The yellow bags, those might be Shaku's. I put the coke under the bed. Make sure it's not there." [Appellant] sold crack cocaine July ninth [and] July tenth, and possessed crack cocaine on July ninth, tenth and eleventh with the intent to sell. I'm going to ask you to find [Appellant] guilty of those acts. Thank you.

*Id.* at 47-48. During deliberation, the jury asked to listen to the two recorded phone calls again or review the transcript of those calls. *Id.* at 78. The trial court noted that "transcripts were not introduced," and as a result, allowed the jury to hear the recordings again. *Id.* at 78-79. Thirteen minutes after hearing the recordings, the jury reached a verdict, finding Appellant guilty of PWID. *Id.* at 79-80.

On April 22, 2016, prior to the start of sentencing, Appellant's trial counsel orally moved for extraordinary relief under Pa.R.Crim.P. 704(B), asserting that Appellant was entitled to a new trial because the Commonwealth's playing of the November 2015 taped prison conversations unfairly prejudiced Appellant. Specifically, trial counsel argued that the jury rendered its verdict within minutes "of the jury asking the sole question in the case, which was to listen to those two phone calls. So I think that it's been demonstrated that they clearly could not separate out whether anything that happened in 2015 was actually probative of anything that was happening in 2013." N.T. Hearing, 4/22/15, at 5-8. In response, the trial court remarked:

If memory serves me correctly, the proffer of that information was to identify and supplement the information as to intent and identification[4] of [Appellant] as the proper person

---

[4] Although not asserted by the Commonwealth, this was the first instance the identification exception to Rule 404(b)(1) was mentioned. The trial court, *sua sponte*, and without offering any analysis references the identity exception.

conducting the sales and knowledge that the sales were of narcotic substances. So it goes to intent, knowledge, as well as lack of mistake and ignorance, which are all components of the rules of evidence. And I believe, if I didn't say so on the record, I believe I deemed that the probative value of that information, given the context from which it was stated, outweighed any prejudicial value that was posed because it clearly demonstrated [Appellant's] knowledge, intent and lack of mistake, which the defense was, to a degree, it wasn't me and somebody else was dealing. So in that context, that's why I ruled in the fashion that I did.

*Id.* at 8-9. The trial court denied the oral motion for extraordinary relief. *Id.* at 10. Subsequently, the trial court sentenced Appellant to three to six years' imprisonment, followed by ten years' probation.

On appeal, Appellant argues, among other things, that the trial court abused its discretion in permitting the Commonwealth to introduce evidence of subsequent bad acts to prove Appellant's intent or knowledge to commit PWID. Appellant's Brief at 24. In support, Appellant points out that he did not dispute any elements of PWID and that his sole defense theory at trial was that he was not the individual who committed PWID in this case. Consequently, he claims that the admission of the 2015 recordings was improper. Further, Appellant asserts that the recordings of the 2015 prison calls discussing cocaine made over two years after his arrest for PWID, bore little to no similarity to the underlying crime of PWID. Finally, Appellant asserts that the trial court's decision to permit the Commonwealth to introduce subsequent bad acts evidence unfairly prejudiced him. *Id.* at 29.

In the context of Rule 404(b) evidence, "[t]he burden is on the party seeking admission to demonstrate the applicability of the exception to the

general rule; in this case, that burden fell on the Commonwealth. There is no presumption of admissibility of other-acts evidence merely because it is somewhat relevant for a non-propensity purpose." ***Commonwealth v. Lynn***, 192 A.3d 165, 171 (Pa. Super. 2018) (citations omitted).

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact. ***Commonwealth v. Spiewak***, 617 A.2d 696, 699 (Pa. 1992). Once evidence is found to be relevant and probative, it is inadmissible only if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. ***Commonwealth v. Lilliock***, 740 A.2d 237, 244 (Pa. Super. 1999) (citing ***Commonwealth v. Foy***, 612 A.2d 1349 (Pa. 1992), ***appeal denied***, 795 A.2d 972 (Pa. 2000)).

Rule 404(b), relating to character evidence, crimes and other acts, provides in relevant part:

> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, ***intent***, preparation, plan, ***knowledge***, ***identity***, ***absence of mistake, or lack of accident***. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> *(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the

general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(1), (2), and (3) (emphasis added). As our Supreme Court has explained in *Commonwealth v. Hicks*, 156 A.3d 1114 (Pa. 2017):

> [E]vidence of [] bad acts, while generally not admissible to prove bad character or criminal propensity, is admissible when proffered for some other relevant purpose so long as the probative value outweighs the prejudicial effect. Such evidence may be admitted to show motive, [intent,] identity, lack of accident or common plan or scheme.[5] In order for other crimes evidence to be admissible, its probative value must outweigh its potential for unfair prejudice against the defendant, [Rule 404(b)(2))], and a comparison of the crimes proffered must show a logical connection between them and the [the bad acts or the] crime currently charged.
>
> This Court has long recognized an exception to the general inadmissibility of other crimes evidence where there is a striking similarity—or logical connection—between the proffered [] bad acts and the underlying offense. . . . As early as 1872, . . . [this Court has] described the importance of such a connection as follows:
>
> > It is a general rule that a distinct crime, unconnected with that laid in the indictment, cannot be given in evidence against a prisoner. It is not proper to raise a presumption of guilt, on the ground, that having committed one crime, the depravity it exhibits makes it likely he would commit another. . . . To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be

---

[5] The official Comment to Rule 404 explains that this list of exceptions is non-exhaustive. Pa.R.E. 404, *cmt*. As a result, courts are not limited to the nine exceptions enumerated in Rule 404(b)(2) when exercising their discretion to allow the admission of other bad acts evidence, as long as the evidence is introduced for a purpose other than to prove character or a propensity to act in accordance with traits of character. *Commonwealth v. Johnson*, 160 A.3d 127, 144 (Pa. 2017); *Commonwealth v. Dillon*, 925 A.2d 131, 137 (Pa. 2007).

> necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other.

> . . . . Sufficient commonality of factors between the other incidents and the underlying crime dispels the notion that they are merely coincidental and permits the contrary conclusion that they are so logically connected they share a perpetrator.

> In further explaining the logical connection standard, this Court has noted much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual or distinctive as to be like a signature.

*Hicks*, 156 A.3d at 463-65 (citations and quotation marks omitted). Moreover, it is well-settled that "Rule 404(b) does not distinguish between prior and subsequent acts." *Commonwealth v. Wattley*, 880 A.2d 682 (Pa. Super. 2005) (citation omitted). "Although evidence of a subsequent offense is usually less probative of intent than evidence of a prior offense, evidence of a subsequent offense can still show the defendant's intent at the time of the prior offense." *Id.* (citation omitted); *accord Commonwealth v. Martinez*, 447 A.2d 272, 274 (Pa. Super. 1982) (explaining that evidence of subsequent offenses is less strongly probative of intent than prior offenses because it does not establish that a defendant possessed the requisite intent prior to the commission of the crime being tried). "Evidence of a later crime is so tenuously related to intent at the time of an earlier crime that it is admissible only if proof of both crimes is necessary to prove the Commonwealth's case." *Martinez*, 447 A.2d at 274-75 (evidence inadmissible to prove the appellant's intent where the Commonwealth had

sufficient evidence to establish the first sale of heroin without introducing evidence of the subsequent sale).

This Court warned in **Ross**:

The purpose of Rule 404(b)(1) is to prohibit the admission of evidence of prior bad acts to prove the character of a person in order to show action in conformity therewith. While Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule. With a modicum of effort, in most cases it is possible to note some similarities between the accused's prior bad conduct and that alleged in a current case. To preserve the purpose of Rule 404(b)(1), ***more must be required to establish an exception to the rule—namely a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question***. . . . This Court has warned that prior bad acts may not be admitted for the purpose of inviting the jury to conclude that the defendant is a person "of unsavory character" and thus inclined to have committed the crimes with which he/she is charged.

**Ross**, 57 A.3d at 105-06 (citations and quotation marks omitted) (emphasis added). Mindful of this warning, and upon careful review of the record, I conclude that the trial court here abused its discretion in allowing the Commonwealth to introduce the 2015 prison calls to establish the appellant's identity in connection with the 2013 crimes and/or to establish knowledge or intent to possess in connection with those crimes.

To make use of the identity exception under Rule 404(b)(1), the Commonwealth would have had to establish that the 2015 phone calls demonstrate that Appellant, to the exclusion of others, was the individual who committed the underlying crime of PWID. In explaining the identity exception

- 11 -

to Rule 404(b)(1), the **Ross** Court pointed out that evidence of crimes may be admissible:

> [t]o prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here, much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature. . . . Required, therefore, is such a high correlation in the details of the crimes that proof that a person committed one of them makes it very unlikely that anyone else committed the others.

**Ross**, 57 A.3d at 102 (citations, brackets and original emphasis omitted); **accord Commonwealth v. Nypaver**, 69 A.3d 708, 717 (Pa. Super. 2013) ("The similarities must describe a crime so distinctive in method and so similar to the charged crime that proof that a person committed one tends to prove he committed the other."). In **Ross**, we agreed with the appellant that the trial court abused its discretion in allowing the Commonwealth to introduce other bad acts evidence, *inter alia*, for purposes of proving identity. We noted that the testimony of three proposed witnesses established only a common thread of physical and/or sexual assault with a foreign object, and this was insufficient for a crime sufficiently unique to signify an identifying signature. **Ross**, 57 A.3d at 102.

Here, the Majority concludes in a single paragraph that the introduction of the 2015 phone calls is necessary and relevant to establish Appellant's identity as the perpetrator of PWID. I do not agree. There is no indication in the record that the drugs (crack cocaine) at issue in the underlying 2013 case were the same as the drugs (cocaine) discussed in the phone calls two years later. Additionally, it is unclear whether the property or location discussed in

the 2015 phone calls was the same property from which drugs were recovered in 2013. The only similarity between the 2013 crime and the 2015 phone call is narcotics. That, however, is insufficient to satisfy the identity exception. In other words, the mere involvement of drugs here is not so unusual or distinctive as to be Appellant's signature, especially when the record is devoid of any high correlation in details between the 2013 crime and 2015 prison recordings. Stripped to its essence, and given the circumstances of this case, the Majority's decision sanctions the introduction of propensity evidence under the guise of the identity exception. I do not dispute that in many cases identity frequently is at issue in criminal proceedings. Following the Majority's approach however, would eviscerate the rules against propensity evidence by introducing under the identity exception other bad acts and crimes without any connection to the crimes being charged.

I now turn to the intent and knowledge exceptions to Rule 404(b)(1). Instantly, the introduction of the subsequent bad act evidence to prove intent or knowledge was improper because Appellant never contested or challenged any elements of PWID, *i.e.*, the underlying crime. Generally, when elements of a crime, such as intent, are undisputed, the Commonwealth's need for other bad acts evidence to establish such elements is nonexistent. **See Commonwealth v. Aguado**, 760 A.2d 1181, 1187 (Pa. Super. 2000) (*en banc*) (noting that parties disputed the element of possession rather than intent and thus the Commonwealth's evidence of the appellant's prior drug transaction, which occurred nine months earlier, was not necessary to rebut

his defense). Thus, unless introduced to counter a defense or a likely inference of a defense, the Commonwealth is not permitted to use exceptions to Rule 404(b)(1). *Ross*, 57 A.3d at 101; *Boczkowski*, 846 A.2d at 89; *see Hicks*, 156 A.3d at 470 (noting that Rule 404(b) evidence tended to establish the elements of first-degree murder instead of accidental death); *see also Commonwealth v. Tyson*, 119 A.3d 353, 362-63 (Pa. Super. 2015) (*en banc*) (noting, among other things, that the Rule 404(b) evidence was admissible to belie the defendant's claim that he mistakenly believed the victim was awake or gave her consent to the sexual intercourse), *appeal denied*, 128 A.3d 220 (Pa. 2015); *Commonwealth v. Kinard*, 95 A.3d 279, 285 (Pa. Super. 2014) (noting, *inter alia*, that the other acts evidence was admissible to dispel the defense of mistake); *Nypaver*, 69 A.3d at 717 (noting that Rule 404(b) evidence was inadmissible because the perpetrator's identity was not at issue at trial); *Commonwealth v. Hude*, 390 A.2d 183, 185 (Pa. Super. 1983) (noting that the Commonwealth's need to offer witness testimony regarding other crimes to negate a defense of mistake, accident or lack of intent was nonexistent, because "the appellant freely admitted smoking marijuana on occasion and did not base his defense in any way on mistake or entrapment").

In *Ross*, the police charged the appellant with first-degree murder and related crimes in connection with the sexual assault and murder of Tina Miller. *Ross*, 57 A.3d at 87. Miller's body was discovered in a prone position, partially immersed in a lake, and covered only in a shirt, a dark sweater, and knee-

high boots. *Id.* Miller's hands were duct-taped behind her back, and additional duct tape was around her head, mouth and arms. *Id.* Dr. Saralee Funke, the forensic pathologist who performed Miller's post-mortem, opined that Miller died of a combination of drowning and strangulation. *Id.* at 88. Injuries to Miller's body included various abrasions to the legs, buttocks, arms and face, an abrasion on the right cheek consistent with a blow to the face, and pattern marks on the left breast consistent with a bite. Critically, Miller's anus and vagina were "massively traumatized." *Id.* Specifically, Dr. Funke described numerous lacerations to this area of the body, including one "so deep that it went through the sphincter muscle[, t]ore the sphincter apart and ended up in the vagina." *Id.* "Dr. Funke opined that these particular injuries likely were inflicted through the use of 'a significant amount of force' with a foreign object." *Id.*

The trial court allowed the Commonwealth to introduce the testimony of three of the appellant's former girlfriends to prove, *inter alia*, the appellant's *intent to kill Miller*. *Id.* at 99. Each woman testified to various acts of violence that the appellant had committed against her, including sexual violence. *Id.* at 99-100. Two of the women testified that the appellant had used foreign objects on her during sex. *Id.*

On appeal, the appellant argued, among other things, that the trial court abused its discretion in allowing the Commonwealth to introduce other bad acts evidence to prove his intent to kill Miller. This Court, sitting *en banc*, agreed, concluding, *inter alia*, that intent was not an issue in the case because

- 15 -

intent to kill Miller could be inferred under the circumstances. *Id.* at 101. We reasoned that "given the circumstances surrounding Miller's murder, including the mutilation of the body, the use of duct tape, and the bite mark on her breast, there can be no question that this was an intentional killing." *Id.* at 101. We further noted that the appellant's "only defense was that he was not the perpetrator, and he did not raise any defense of accident, mistake or lack of required intent." *Id.* As a result, we concluded that "prior bad acts testimony should not have been permitted *with regard to intent*." *Id.* (emphasis added).

By contrast, in *Boczkowski*, our Supreme Court noted that the evidence adduced at trial raised an inference of mistake or accident that entitled the Commonwealth to introduce prior bad acts evidence to dispel that inference. *Boczkowski*, 846 A.2d at 89. The appellant was charged with, and subsequently convicted of, murdering his wife, Mary Ann. On the night of the murder, the appellant called paramedics, who found Mary Ann intoxicated and unresponsive in a hot tub at the couple's home. The paramedics determined that Mary Ann was incapable of resuscitation. The Commonwealth sought to introduce evidence of the appellant's conviction in North Carolina for the murder of his former wife, Elaine. Similar to the circumstances surrounding Mary Ann's death, Elaine died in a bathtub at the couple's home while intoxicated. As noted, our Supreme Court held that the prior bad acts evidence of the circumstances surrounding Elaine's murder and the appellant's subsequent conviction of that murder were admitted properly

to dispel the inference that Mary Ann died as a result of an accident. **Id.** at 88-89.

Instantly, Appellant did not hold himself out as an upstanding, law-abiding citizen. Rather, as in **Ross**, Appellant raised a mistaken identity defense at trial, claiming that he was not the person who sold crack cocaine to the CI on July 9 and 10, 2013. Indeed, Appellant did not dispute any elements of the charged crime, *i.e.*, PWID. Appellant did not aver that he sold crack cocaine to the CI unintentionally, or without knowledge of the content of what he sold. Appellant also did not dispute the element of possession necessary for a PWID conviction. Appellant likely recognized that challenging the elements of PWID would have been futile considering that an undercover police officer observed the controlled purchases of crack cocaine by the CI. Thus, given the circumstances surrounding the controlled purchases and the first-hand observations of the same by Officer Yerges, intent to commit PWID can be inferred. Additionally, unlike **Boczkowski**, the evidence, or lack thereof, presented by the Commonwealth either at the hearing on Appellant's motion *in limine* or at trial did not raise an inference that the sale of crack cocaine to the CI on July 9 and 10, 2013 was a mistake, accident or otherwise unintentional. As a result, I conclude that the introduction and admission into evidence of the 2015 recordings to prove Appellant's intent or knowledge to possess crack cocaine was an abuse of discretion. The trial court abused its discretion in allowing the Commonwealth to introduce evidence of Appellant's subsequent prison calls discussing coke for purposes of proving Appellant's

intent and knowledge to commit PWID, for which he was arrested and charged more than two years earlier. This is particularly so where the Commonwealth fails to establish any nexus between the drugs discussed in the 2015 phone calls and the drugs underlying the 2013 PWID charges.

I, therefore, respectfully dissent and would vacate and remand this case to the trial court for a new trial.