443 A.2d 804

**COMMONWEALTH of Pennsylvania**

v.

**Robert E. LEE, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed Feb. 12, 1982.

218

Norman A. Levine, New Castle, for appellant.

Paul W. Johnson, Assistant District Attorney, New Castle, for Commonwealth, appellee.

Before SPAETH, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

Appellant, Robert E. Lee, was arrested for robberies which had occurred at a Lawson Milk Company, on October 3, 1978, and at a Fast and Friendly Food Market, on October 22, 1978. Two separate trials were held, and appellant was found guilty both times by a jury for robbery. Post-verdict motions were denied, and appellant was sentenced at No. 117–1979 (the Lawson's robbery) to a term of imprisonment of not less than six nor more than fourteen years in prison. Appellant's other sentence, at No. 118–1979, was a concurrent term of imprisonment of not less than five nor more than ten years. Both sentences also were to run concurrent with the term appellant was already serving on a previous conviction. Appeals from both terms, Nos. 117–118 of 1979, have been filed to this Court and consolidated. Although appellant raises similar issues in both appeals and the facts pertinent to each overlap, the issues will be addressed in separate discussions. For the following reasons, we reverse the judgment of sentence and remand for a new trial at No. 117–79 (44 Pittsburgh 80), and reverse the judgment of sentence and order appellant discharged at No. 118–79 (61 Pittsburgh 80).

## No. 117

In this appeal, it is alleged that the trial court erred in allowing a police officer to testify that appellant was arrested twenty days after the crime in a Lawson's parking lot and had possession of a gun when, in fact, appellant contends he was not arrested at that time for the crime in question. We agree.

As a general rule, the prosecution cannot introduce testimony from which the jury could reasonably infer that the defendant has been engaged in criminal activity not

charged in the indictment or information for which the defendant is being tried. See *Commonwealth v. Fuller*, 479 Pa. 353, 388 A.2d 693 (1978); *Commonwealth v. Martin*, 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973) *cert. denied*, 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 219 (1973). Our cases have so often stated that:

> "[t]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence [. . .] *Com[monwealth] v. Terry*, 462 Pa. 595, 599–600, 342 A.2d 92, 94–95 (1975) (quoting *Com[monwealth] v. Clark*, 453 Pa. 449, 452–3, 309 A.2d 589, 590–91 (1973)." *Commonwealth v. Spruill*, 480 Pa. 601, 605–606, 391 A.2d 1048, 1049–50 (1978).

■ The first area of inquiry is whether the jury could *reasonably* infer, either expressly or by implication, from the facts presented that the accused had engaged in unrelated criminal activity. See *Commonwealth v. Fuller*, supra. In the instant case, we conclude that the jury could so reasonably infer such activity from all of the attendant circumstances. See *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976).

The record reveals the following:

During the prosecution's case-in-chief, a police officer, Richard Dunkerley, was called to the stand. However, before he testified, the following occurred:

[The District Attorney]

"MR. JOHNSON: We will call Officer Dunkerley.

[Defense Counsel]

MR. PANELLA: May we have a sidebar?

THE COURT: Yes.

AT SIDEBAR

MR. PANELLA:  Your Honor, I would like an offer of proof on this testimony from this officer from Hermitage.  I don't know what he is going to testify to.

MR. JOHNSON:  This officer arrested the Defendant.

THE COURT:  What he wants to know, you tell on the record, we offer to prove by this witness these things and then I will know what you are going to ask him.

MR. JOHNSON:  We offer to prove on the record that the Defendant is alleged to have had a certain gun in this robbery *and he was arrested about three weeks later with a gun that matches this gun exactly at the Lawson's store in another community under suspicious circumstances.*  Now, we are not going to go into the circumstances behind the arrest, but it certainly is good evidence that he has a same gun he was seen with.

THE COURT:  We are/not [sic] going to let you refer to suspicious circumstances.  *This officer may testify that he had an occasion to arrest the man, if that is what he did, and then in a search of this person, he found this revolver and was identified by somebody as being the one that looked like the one used in the store.*

MR. PANELLA:  I don't think that, number one, that the Defendant was never [sic] charged on this other Lawsons— never charged for any crime for Lawsons, this Lawsons he is describing.  *He was never charged with any crime.  He was never charged with a crime carrying a gun.*  I don't think his witnesses have identified this gun as the same gun.

MR. JOHNSON:  They have identified it to me as being the exact gun—one of them.

THE COURT:  *We are going to permit that part of it that I said I would permit, but nothing more and if he goes over the bounds, you move for a mis-trial [sic] and we will grant it.*

MR. PANELLA:  *You are going to permit what?  The fact he was arrested on another charge?*

MR. JOHNSON:  *I am not going to mention any other charges.*

MR. PANELLA: *That the officer arrested him?*

MR. JOHNSON: *I am not going to mention that.*

MR. PANELLA: How are you going to get in the fact that he found him with a gun if he wasn't arrested? He seen a guy with a gun?

MR. JOHNSON: Yes.

MR. JOHNSON: Yes.

MR. PANELLA: He has never been charged with any crime.

THE COURT: We are going to permit it. You have an exception on the record. We will permit it to that extent that I stated and no further.

*END SIDEBAR*

*RICHARD DUNKERLEY*, called as a witness, being first duly sworn according to law, testified as follows:

*BY MR. JOHNSON* : Direct Examination:

Q. State your name, please.

A. Richard Dunkerley.

Q. What is your occupation?

A. I am a police officer.

Q. With what police department?

A. Municipality of Hermitage, Mercer County.

Q. Hermitage?

A. Yes.

Q. You say that is in MercerCounty [sic], Pennsylvania?

A. Yes, sir.

Q. I will ask you, officer, if you have any connection with this case.

A. Yes sir.

Q. *And will you tell us whether or not you, at any time, have arrested the Defendant?*

A. *Yes, sir, I have.*

Q. *Would you give us the date that this occurred?*

A. October 23—

MR. PANELLA: *I would object to this testimony we have already discussed this at sidebar.*

THE COURT: Objection is overruled at this point.

BY MR. JOHNSON: Continuing:

Q. What was the date, officer?

A. *October 23, 1978.*

Q. Where was he arrested?

A. *At a Lawson's parking lot, Buhl Farm Drive and Highland Road in Hermitage.*

Q. Hermitage is a township. Is that right?

A. *Yes.*

Q. After the Defendant was arrested by you in this Lawson's parking lot, would you tell us whether you conducted a search either of his person or of his vehicle?

A. I conducted a search of both.

Q. And during the course of that search, would you tell us whether you found any piece of evidence that might relate to this case?

A. *In his car I found a .25 caliber semi-automatic pistol.*

Q. Officer, would you remove this item from this bag for us please?

The officer does so.

Q. Officer, this item which I will refer to as Commonwealth's exhibit number one is a handgun. Is that correct?

A. Yes, sir.

Q. That is the handgun you removed and would you tell us at the time you discovered this handgun whether or not it was loaded?

A. There was [sic] two live rounds in the clip and a spent cartridge was jammed in the receiver and the receiver was partly opened.

Q. The spent cartridge, you mean an empty cartridge?

A. Yes.

Q. Was jammed into the ejection mechanism?

THE COURT: All we need to know is that he found the gun and then you go from there.

MR. JOHNSON: Yes, Your Honor. If the Court please, Commonwealth will offer this into evidence as Commonwealth's exhibit number one.

MR. PANELLA: I would object.

THE COURT: Objection is sustained.

BY MR. JOHNSON: Continuing Direct Examination:

Q. I have no further questions."

(N.T. 6/25/79, at 24–28). (Emphasis added). On cross-examination, the following testimony was elicited:

"Q. *Mr. Dunkerley, Mr. Lee [the appellant] wasn't arrested for robbing Lawsons in Hermitage Township, was he?*

A. *No sir.*

Q. *The gun was in the car?*

A. *Yes sir.*

Q. *He wasn't charged with having a firearm either, was he?*

A. *No sir.*

THE COURT: That is all."

(N.T. 6/25/79, at 30) (Emphasis added).

Although from defense counsel's questioning, excerpted above, Officer Dunkerley did state on cross-examination that appellant was not arrested for robbery or for possession of a prohibited weapon at the Lawson's Milk Store in Hermitage, the jury *was* apprised of two critical facts in the case. Those facts were that (1) appellant was not charged with the instant robbery until December 11, 1978, (N.T. 6/25/79, at 34), and that (2) the "arrest" at Lawson's parking lot occurred on October 23, 1978, which was more than a month and a half before he was charged for the instant robbery.[1] But see *Commonwealth v. Claffey*, 264 Pa.Super.

1. During its case-in-chief, the prosecution called a New Castle police officer, Lieutenant Leon Sasiadek, whose testimony established that appellant was *not* a suspect in the instant robbery until December 11, 1978, the date the charges were filed. (N.T. 6/25/79, at 3–4).

453, 456, 400 A.2d 173, 174 (1979) (where this Court said, "Had the jury been apprised of both the date of appellant's arrest and the date of the [fingerprint card], then the detective's reference to a fingerprint card *would have indeed* given rise to a reasonable inference of a prior criminal offense on appellant's part".) (emphasis added). Under these circumstances, the jury could only conclude that the incident involving appellant's "arrest" at Lawson's parking lot on October 23rd was unrelated to the instant case and must have been related to some *other* criminal activity. As such, it was an impermissible reference since there was no causal connection between how the arrest at Lawson's parking lot related to the robbery at a different Lawson's in another community.[2]

Both the prosecution and the trial court assert that the reference to appellant's arrest is admissible because traditional exceptions to the rule barring evidence of unrelated criminal activity are applicable. We are not persuaded by their argument.

The special circumstances justifying exceptions to the general rule exist when the evidence of unrelated criminal activity tends to establish the following:

" '(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity [*] of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.' *Commonwealth*

2. The prosecution argues that the reference did not indicate criminal activity because the word "robbery" was not mentioned. We cannot agree. Where as here, the attendant circumstances disclose that appellant had been arrested for the instant robbery at Lawson's in New Castle, more than one month *after* the "arrest" at Lawson's parking lot in Hermitage, a neighboring community, the words used implied criminal activity even though the word "robbery" was not spoken.

*v. Peterson,* supra, 453 Pa. [187] at 197–198, 307 A.2d [264] 269." [**]

[*] In *McCormick,* supra at 448, the commentator states that the need to prove identity alone is usually not sufficient to permit the introduction into evidence of other crimes. Instead, evidence of other crimes establishing a defendant's identity is generally admitted when it is interrelated with one of the other exceptions specified above. The exceptions most frequently resorted to for this purpose are motive, a common scheme or plan, and an identical *modus operandi.* See also *Commonwealth v. Patterson,* 247 Pa.Super. 199, 372 A.2d 7 (1977) (Dissenting opinion by HOFFMAN, J. in which JACOBS and SPAETH, JJ. joined), allocatur granted.

[**] Some Pennsylvania cases have articulated a more streamlined version of the special circumstances justifying exceptions to the general rule against evidence of other crimes. In *Commonwealth v. Fortune,* 464 Pa. 367, 373, 346 A.2d 783, 786 (1975), the Supreme Court stated:

'[E]vidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or establish the identity of the person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.' (Emphasis in original) *Commonwealth v. Fortune,* 464 Pa. 367, 346 A.2d 783, 786 (1975); See also, *Commonwealth v. Foose,* 441 Pa. 173, 272 A.2d 452 (1971); *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955)."

*Commonwealth v. Hude,* 256 Pa.Super. 439 at 441–44, 390 A.2d 183 at 184–5 (emphasis is in original),

The prosecution argues that the reference is admissible under the "res gestae" exception because:

"[T]he purpose of the testimony was to establish that at this time (an hour or so after the crime) he [the appellant] possessed a handgun similar to that used in the crime (a robbery) and possessed fruits of the crime. As such, the arrest was clearly part of the continuing sequence of events that evening and was part of the Res Gestae of the offense. Even if there was testimony that he was arrested for a seperate [sic] crime occurring that evening that would be admissable [sic]. *Com[monwealth] v. Coles,* 265 Pa. 362[, 108 A. 826 (1919) ]. Brief for the Prosecution at 3–4.

This characterization is inaccurate.

The "res gestae" or "same transaction" exception has been applied in situations where "[the] prior conviction or

criminal act formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts." *Commonwealth v. Brown,* 462 Pa. 578, 591, 342 A.2d 84, 90 (1975). Accord *Commonwealth v. Davenport,* 286 Pa.Super. 212, 215, 428 A.2d 647, 649 (1981); see also McCormick Handbook on Evidence, § 190, (2d ed. McCleary 1972). Thus, if, as the prosecution contends, "the evidence of other events ... [was] necessary to complete the picture of the day in question" *id.,* and not to prove the defendant's criminal disposition in general,[3] that evidence would have been admissible. In the instant case, however, appellant's arrest on October 23rd in an unrelated matter was not "necessary to complete the picture" of the robbery which had occurred twenty days previous to the day in question, which was October 3rd. *Id.*

Furthermore, we cannot agree with the trial court that appellant received a fair trial free of prejudicial error. The trial court concluded that the evidence of appellant's "arrest" along with the other testimony which established that appellant possessed a gun on the night of the robbery in question was admissible to establish appellant's possession of a handgun in the robbery of October 3rd and "was in the overall evidentiary proof required of the Commonwealth and ... [tended] to prove or at least to corroborate proof of the identity of the defendant as the person who committed the Robbery of October 3rd." Trial Court Opinion at 9.

The reference to appellant's "arrest" on an unrelated charge does not establish any identifying facts and only

3. With respect to this particular exception, we also have observed the following:

"[W]hile evidence of the 'same transaction' sometimes inappropriately called 'res gestae' has been generally treated as an exception to the rule barring evidence of prior crimes, this treatment appears conceptually incorrect. Evidence of the same transaction is not evidence of a prior transaction or crime, and therefore it need not be excepted from the general rule because it does not fall within the purview of the rule to begin with."

*Commonwealth v. Davenport,* 286 Pa.Super. at 216 n.1, 428 A.2d at 649 n.1.

tends to prove the appellant's criminal disposition in general. See *Commonwealth v. Brown,* supra; see also *Commonwealth v. Bond,* 261 Pa.Super. 311, 317 n.4, 396 A.2d 414, 417 n.4 (1978).

Even, however, assuming arguendo that the reference to appellant's possession of the gun may have been relevant to the instant case, and even if the reference to appellant's arrest may have fallen within one of the exceptions to the general rule barring evidence of unrelated criminal activity, the prejudicial impact of the *entire reference,* more specifically, the reference to appellant's arrest at a Lawson's parking lot, outweighed its probative value. See *Commonwealth v. Stanley,* 484 Pa. 2, 10, 398 A.2d 631, 635 (1979) (reversible error occurred when the Commonwealth, during its case-in-chief, introduced other details to show the defendant's possession of a .38 caliber automatic pistol. The Court said "The Commonwealth could have easily shown possession and access in the hours prior to the killing without eliciting other details.") Accord *Commonwealth v. Foose,* 441 Pa. 173, 272 A.2d 452 (1971). Cf. *Commonwealth v. Scott,* 496 Pa. 188, 196, 436 A.2d 607, 611 (1981) (undue prejudice is obvious if the Commonwealth would have been permitted to ask the defendant's character witness if they heard he had been *arrested* for assaulting his wife and on a weapons charge).

First of all, the prosecution indicated that he was not going to mention that the [police officer "arrested" the appellant]. (N.T. 26). The prosecutor stated that he was only going to mention the fact that the police officer had "seen a guy, [the appellant], with a gun." *Id.* Shortly thereafter, the prosecutor posed the question if the officer "at any time, ha[d] arrested the Defendant?" (N.T. 27). The prosecution's probing then continued with the query, "[w]here was he [the defendant] arrested?" (N.T. 27), and the jury was informed that appellant was "arrested" in Lawson's parking lot on October 23rd, and that appellant was not charged with the instant crime until December 11th. The only reasonable import of the reference to the "arrest"

is that the appellant must have been involved in some other *unrelated* criminal activity.[4] Accordingly, the injection into the trial by the prosecutor and the witness of the "arrest" on October 23rd was unnecessary and inadmissible.

In certain cases, even the admission of certain prejudicial testimony has not warranted a new trial where the error was harmless beyond a reasonable doubt. See *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. Gardner*, 246 Pa.Super. 582, 371 A.2d 986 (1977). In the instant case, however, we cannot say that the reference to appellant's "arrest" "could not have contributed significantly to the verdict reached." *Commonwealth v. Parks*, 273 Pa.Super. 506, 520, 417 A.2d 1163, 1170 (1979). The jury's determination of the case depended upon the credibility of the witnesses. More particularly, was the jury to believe the prosecution's version of the facts that appellant robbed the store at 11:30 p. m. on October 3rd, or the defense counsel's case that appellant was with his wife at the time of the crime?[5]

**4.** We have said that the problem in this area of the law is not one of "pigeon-holing" the evidence into one of the exceptions (i.e., motive, intent, identity, general scheme) regarding inadmissible evidence to show unrelated criminal activity. Instead, we have agreed with McCormick's criticism of

"judges who end all inquiry once they decide whether or not a particular exception to the 'other crimes' rule applies. The commentator warns that this practice of 'pigeon-holing' may cause trial and appellate judges to 'lose sight of the underlying policy of protecting the accused against unfair prejudice. The policy may evaporate through the interstices of the classification.'" McCormick, supra at 453. Accordingly[,] the commentator recommends that courts balance ". . on the one side, the actual need for the other crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, and the strength or weakness of their other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the overmastering hostility. [supra] at 453." *Commonwealth v. Hude*, 256 Pa.Super. at 444, 445, 390 A.2d at 185. Accord *Commonwealth v. Bond*, supra.

**5.** The fact that a case was tried by a jury, as was the case before us, instead of by a judge sitting without a jury also has been relevant in determining whether reversible error has occurred. See *Common-*

Appellant did not testify. See *Commonwealth v. Rozanski*, 289 Pa.Super. 531, 433 A.2d 1382, 1383 (1981) (where this Court said that evidence of defendant's criminal activity, although relevant, had to be weighed with the passion it would stir in the jury. This Court said: "We should find this question difficult if appellant had not testified.") Thus, even though there was eyewitness testimony that appellant was seen at the store, and further evidence that he pulled a gun on one of the witnesses during the robbery, the impact was nonetheless significant. See *Commonwealth v. Fortune*, 464 Pa. 367, 373, 346 A.2d 783, 787 (1975) (whenever a jury improperly receives evidence of other crimes, the impact is significant). The police officer's reference to appellant's "arrest" in an unrelated matter might have influenced the jury away from appellant and towards the prosecution.

### Nos. 117–118—1979

In this appeal, appellant also argues that his motion to dismiss the charges underlying both informations should have been granted and further argues that the Commonwealth's petition to extend the run date was granted improperly. We agree with appellant and find that the extension at No. 118 was granted improperly. However, because appellant agreed to extend the trial date at No. 117, no Rule 1100 violation occurred.

In the instant case, the mandatory period commenced running on December 11, 1978, when the complaints on both charges were filed against the appellant. One hundred and eighty days from that date was June 9, 1979; however, since the 180th and 181st days fell on a Saturday and Sunday, respectively, those days were to be omitted from the compu-

wealth v. Stokes, 279 Pa.Super. 361, 372, 421 A.2d 240, 246 (1980). In *Stokes*, we stated that the rule concerning prejudicial evidence will not be strictly enforced when the finder of fact is the trial judge and not the jury, but neither will it be ignored completely, allowing the judge to hear any evidence no matter how prejudicial. *A fortiori*, when the finder of fact is the jury, the rule concerning prejudicial error is to be strictly enforced.

tation in accordance with 1 Pa.C.S. § 1908, making June 11, 1979, the relevant run date.[6]

■ The record reveals that defense counsel agreed to conducting a trial the week of June 25th, and one of the trials, at No. 117, did commence on that day. Although a defendant has no duty to object to the scheduling of his trial beyond the run date, he also cannot complain when his statements or acts "indicate that he approve[d] of or accept[ed] the delay." *Commonwealth v. Garrison*, 277 Pa.Super. 18, 25, 419 A.2d 638, 642 (1980). The relevant portions of the arraignment record consist of the following:

"THE COURT: Well, if you or your counsel desires copies of the indictments, you may have them. We would also say to you that you will have time enough to—

MR. PANELLA: He has thirty days to file pre-trial motions.

THE COURT: Thirty days to file any pre-trial motions pertaining to these cases. If they are not filed, or if they are filed—they will be disposed of—and they will probably be set down for trial in June.

MR. PANELLA: *The last two weeks of June, I believe, is the trial term.*

THE COURT: Well, the week of June 25th is jury trials—

MR. PANELLA: That's correct, Your Honor.

THE COURT: And this is the 25th also—

MR. PANELLA: *That's correct.*

THE COURT: So he has thirty days before the week of June 25th. *This trial probably will be set down sometime during the week of June 25th. Maybe not on that day of June 25th—but, during that week.* If you have any motions to file, I am sure Mr. Panella will take care of them for you.

MR. PANELLA: *Thank you, Your Honor.*

6. According to the record, counsel for the appellant had scheduled other legal engagements in another county during this time. Hence, he was unavailable. See *Commonwealth v. Miller*, 247 Pa.Super. 132, 135, 371 A.2d 1362, 1364 (1977). Accord *Commonwealth v. Smith*, 262 Pa.Super. 258, 396 A.2d 744, 746 (1978).

THE COURT: That's all." (N.T. 5/25/79 at 2–3) (Emphasis added).

■ From the colloquy excerpted above, we can infer from counsel's statements that he "gave the appearance of approval to the court's scheduling of one of the trials [to June 25th, which was] beyond the time limits set forth in Pa.R.Crim.P. 1100(e). Accordingly, we hold that appellant may not now complain that Rule 1100(e) was violated." *Commonwealth v. Hickson*, 235 Pa.Super. 496, 500, 344 A.2d 617, 618 (1975) (footnote omitted) (where counsel's statement, "Any day is fine with me, Your Honor" was indicative of his agreement to postpone the trial when asked if June 19 would be satisfactory.")

Although the court did not specify which of the informations was to be tried "the week of June 25th" when it said "[t]his trial probably will be set down sometime during the week of June 25th", appellant cannot complain to the scheduling of the first trial date, which was the trial on the information filed on the first robbery at No. 117–79. (N.T. 5/25/79 at 3). Hence, no Rule 1100 violation occurred on this charge.

In order to resolve the other Rule 1100 issue surrounding the information at No. 118, however, we must examine the propriety of the trial court's granting of the prosecution's petition to extend the run date. The controlling section of Rule 1100, subsection c, provides as follows:

"(c) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced."

Appellant argues that the prosecution's petition was filed untimely because it was filed on June 13th, which was two days after the run date. However, from the record it appears that the appellant's attorney had scheduled other legal engagements in another county from May 21st to the 25th, and that was the reason for his unavailability.

█ Hence, counsel's unavailability during this time is properly excludible, and the prosecution's petition was filed on time. *Commonwealth v. Cohen*, 481 Pa. 349, 352, 392 A.2d 1327, 1329 (1978); *Commonwealth v. Miller*, 247 Pa.Super. 132, 135, 371 A.2d 1362, 1364 (1977). Accord, *Commonwealth v. Smith*, 262 Pa.Super. 258, 262, 396 A.2d 744, 746 (1978).

Turning now to the trial court's granting of the extension, the order issued read as follows:

"ORDER

NOW, June 26th 1979 the Motion to Dismiss under Rule 1100 is denied, and the Petition to Extend Time of the Trial is granted.

The trial of the indictment at No. 117 of 1979 to proceed on Wednesday, June 27th, 1979 at or before one-thirty o'clock P.M. prevailing time; the trial of the indictment at No. 118 of 1979 to commence on Monday, August 20th, 1979, at nine-thirty o'clock A.M. prevailing time.

BY THE COURT:

S/ Frank E. Reed, J.

Specially Presiding

Same day exceptions granted and bill sealed to the Commonwealth and to the defendant in the indictment at No. 117 of 1979, and to the indictment at No. 118 of 1979.

S/ Frank E. Reed, J.

Specially Presiding"

Because we have already determined that counsel had agreed to the first trial date, we need only examine that aspect of the order which extended the trial date to "Monday, August 20th, 1979 at nine-thirty o'clock A.M. prevailing time." *Id.*

Of course, our threshold inquiry in examining the propriety of the extension has been often-stated:

" 'A court may grant the Commonwealth an extension of time for trial if it finds that "trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth." Pa.R.Crim.P. 1100(c).' *Commonwealth v. Miller*, [270] Pa.Super. [178], [182], 411 A.2d 238, 240 (1979).

The Commonwealth has the burden, by a preponderance of the evidence, of showing it has met the requirements of Rule 1100(c). Cf. *Commonwealth v. Wade*, 475 Pa. 399, 380 A.2d 782 (1977); *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977). Furthermore, in reviewing a hearing court's ruling that the Commonwealth has met its burden, we consider only the evidence presented by the Commonwealth and so much evidence as, fairly read in the context of the record as a whole, remains uncontradicted. See *Commonwealth v. Mitchell*, supra."

*Commonwealth v. McNeil*, 274 Pa.Super. 257, 418 A.2d 394 (1980).

The record reveals that the prosecution filed a petition which alleged that it was ready to proceed to trial the week of May 21st. In support of its conclusion, the prosecution stated that trial could not be commenced before the run date because of counsel's unavailability and also because counsel requested thirty days to file pretrial motions. At the rule 1100 hearing, which was held on June 22nd, the assistant district attorney and the defense counsel testified. Although defense counsel stipulated that Paul Johnson, the prosecutor who represented the Commonwealth at all of the proceedings relevant to the instant case at the trial level, was at the courthouse on the date of the arraignment, he would not stipulate that the Commonwealth was ready for trial. However, the prosecutor stated that he and "Mr. Sasiadek, the other prosecutor on one of the charges" was also present and that the prosecutor saw "Mr. Sasiadek with a group of Commonwealth witnesses and he informed me that they were ready to go to trial." (N.T. 6/22/79, at 8).

However, even if we accept the prosecution's version of the facts that it was ready to proceed to trial, there is no evidence in the record to support an extension by the prosecution to extend the other trial to "Monday, August 20th, 1979 at nine-thirty o'clock A.M. prevailing time." See Trial Court's Order dated June 26th, infra at 21–22.

Apparently, the entire thrust of the prosecution's argument and of the testimony presented at the Rule 1100 hearing concerned the time that defense counsel was involved in another legal matter and also the allegation that the prosecution was ready to proceed to trial during the week of May 21st. There is no allegation or indication in the record or otherwise that judicial delay caused the scheduling of the second trial to August 20th, or that defense counsel was unavailable up until that date. Thus, any delay beyond the June 25th date is beyond the purview of the Rule and therefore not excludible under either subsection c or d. Therefore, "without any evidence on record upon which the lower court could have made a factual finding of due diligence, the order extending the time for trial (under Rule 1100(c)) [to Monday, August 20th, 1979 at nine-thirty o'clock A.M. prevailing time] must be seen as a nullity."[7] *Commonwealth v. Warman*, 260 Pa.Super. 130, 135 n.4, 393 A.2d 1046, 1048–9 n.4 (1978).

Moreover, we are not confronted with an incomplete record as was before this court in *Commonwealth v. Krall*, 249 Pa.Super. 433, 378 A.2d 373 (1977). The record contains a transcript of the Rule 1100 hearing which concerned both charges, the petition to dismiss and the petition to extend. The answers filed in response to those motions are also before this Court. Additionally, nowhere in the transcripts

7. It is interesting to note the court's closing remarks which were made at the Rule 1100 hearing:
"THE COURT: Probably my present inclination, and that may be the result, that I am going to be like Salmon [sic], I am not going to cut the baby in half but since both parties are in half, I am probably going to refuse the motion and let you take it to the Superior Court. That is a better Court than I am, as you well know." (N.T. 6/22/79, at 19–20).

does the prosecution attempt to support its petition with any other reasons or facts. Under these circumstances, we must hold that the prosecution failed to prove the exercise of due diligence at No. 118–79, and accordingly the trial court erred to this extent when it granted the prosecution's petition to extend.

Judgment of sentence at No. 117–79 (44 Pittsburgh 80) is reversed, and the matter is remanded for a new trial, and the judgment of sentence at No. 118–79 (61 Pittsburgh 80) is reversed and appellant ordered discharged.[8]

SPAETH, J., concurs in the result.

---

8.  In this appeal appellant also raised other issues; however, we need not address these issues in view of our disposition of the matter.