450 A.2d 9

**COMMONWEALTH of Pennsylvania**

**v.**

**Frank TURNER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 4, 1981.

Filed July 23, 1982.

Douglas M. Johnson, Assistant Public Defender, Norristown, for appellant.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before BROSKY, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence imposed after a jury trial where appellant, Frank Turner, was found guilty of burglary [1], theft by unlawful taking or disposition [2], receiving stolen property [3], criminal conspiracy [4], and resisting arrest [5]. Post-verdict motions were denied, and appellant was sentenced on the burglary conviction to a term of imprisonment of not less than one and one half years nor more than three years. The court suspended sentence on the remaining convictions.

In this appeal, appellant raises four issues. They are: (1) whether the court erred when it allowed testimony concerning a crime for which appellant was not standing trial; (2) whether the court erred when it denied appellant's motion for a mistrial because of the improper remarks made by the prosecutor in closing argument; (3) whether the court erred when it denied appellant's motion to suppress certain identification testimony; and (4) whether the evidence was sufficient to prove his guilt beyond a reasonable doubt. We have reviewed appellant's contentions and conclude that they are without merit.

The basic facts are undisputed. At approximately 6:30 a.m., on August 21, 1979, a burglar alarm from Wanamaker Department Store alerted the Abington Township Police. A

1. 18 Pa. C.S.A. § 3502.

2. 18 Pa. C.S.A. § 3921.

3. 18 Pa. C.S.A. § 3925.

4. 18 Pa. C.S.A. § 903.

5. 18 Pa. C.S.A. § 5104.

police officer responded within a minute to the scene and observed a late model Cadillac driving away from the store. The officer pursued the vehicle in a high speed chase, since there were no other vehicles in the area at that time, and the officer was able to see three individuals in the car. As the driver of the suspect car passed directly along the side of the police officer's vehicle, the officer saw the appellant, the driver, who was only ten feet from the police car. From this view, the police was able to formulate a description of the driver, a small individual, approximately 5 feet, 8 inches tall, a black male, with a "hawk-like nose". With the assistance of another police officer, the officers attempted to capture the vehicle. The police activated their sirens until the car crashed. One suspect was apprehended at the scene. However, appellant and a female companion abandoned the car and fled.

Meanwhile, a third officer who had also been dispatched entered the John Wanamaker building. He found that the doors had pry marks on them and were heavily damaged. A crowbar was observed lying on the floor in the area of an empty rack of designer's men's suits. One rack of suits was observed to be empty. The interior of the Cadillac was found to contain designer's men's suits with the "John Wanamaker" tags still affixed to them. A police check on the vehicle identification number of the Cadillac disclosed that the vehicle was owned by Robert Spaddy, who testified at the trial that he reported that his car was missing as of August 15, 1979. Mr. Spaddy identified the Cadillac involved in the high speed chase as belonging to him.

Mr. Spaddy also identified his Pennsylvania Registration License, 0L9476. This license plate was found inside the Cadillac and underneath a pile of Wanamaker suits. The license plate which was found on the car at the time of the chase was Pennsylvania registration 97685U. That license plate was registered to appellant and was issued to a Buick. Records from Harrisburg also established that the above automobile, the Buick with the license plate affixed to the Cadillac and belonging to Frank Turner, had been reported stolen on August 26, 1979.

On August 24, 1979, appellant surrendered himself to the police upon learning that an arrest warrant had been issued for him the previous day. Upon being arrested appellant was questioned and admitted that he knew the female suspect who was alleged to have been in the Cadillac.

During the trial, the prosecution called Robert Spaddy to the witness stand. The defense counsel requested an offer of proof on Spaddy's testimony. An in-chambers conference followed because Spaddy's testimony would establish independently that the vehicle appellant was driving at the time of the crime was stolen. Defense counsel contended that such a reference was an impermissible reference to criminal activity because two charges against appellant, theft by receiving stolen property and unauthorized operation of a motor vehicle, were dismissed since the prosecuting witness failed to appear at the scheduled preliminary hearing. At the end of the conference, the court concluded that the owner of the stolen vehicle could testify.

To begin with, the prosecution argues that appellant has waived the issue of whether the trial court improperly admitted into evidence testimony concerning a stolen vehicle which was used to commit the crime. According to the prosecution, defense counsel conceded that the testimony was relevant to show motive and intent. However, even though the following portion of the record establishes that counsel so conceded the issue, the record also shows that defense counsel nonetheless argued that the testimony was prejudicial and for this reason should have been excluded:

[Defense Counsel]: "I think you put your finger on it, *the inference in that you say could possibly be drawn. But my fear* is that a very, very great inference that can be *drawn is the fact that he stole the car,* and *he is not on trial for stealing the car,* and in fact it's been dismissed. That's the whole purpose of it. Either he participated in this deal, he stole it or participated, and it was stolen for the purpose for which it was used. It is to consider motive and intent. That's what it is admissible for.

THE COURT: This is happening within a short period of time thereof, six days as a matter of fact. The Court will allow his testimony.

(The conference in chambers was concluded. The trial proceeded in the presence of the jury and the Defendant.)"

Trial Transcript at 11–12. (Emphasis added).

In view of the above, we must reject the prosecution's theory of waiver since our reading of the record reveals that appellant's attorney challenged the admissibility of the testimony of Robert Spaddy even though he did not utter the magic words, "I object".

Appellant first contends "that the introduction of evidence as to the theft of the automobile was extremely prejudicial in his case and left the jury with the impression that he had stolen the car or had committed another crime. Said inference was completely unjustified and was not based upon any law." Brief for Appellant at 13. We must reject appellant's contention.

The testimony which appellant challenges was as follows:

"BY MR. WILLIAMSON: [The Prosecutor]

Q   Mr. Spaddy, where do you reside?

A   Philadelphia, Pennsylvania.

Q   What is your address?

A   1611 Chesapeake Place, Philadelphia.

Q   Who do you live with in Philadelphia?

A   My wife and child.

Q   What do you do for a living, sir?

A   Postal employee.

Q   Are you a letter carrier?

A   Letter carrier.

Q   Directing your attention to August 15, 1979, did you own a motor vehicle on that date?

A   Yes, I did.

Q   What kind of car did you own?

A  A 1978 four door sedan Cadillac.

Q  What was the color of that car?

A  Beige.

Q  What was the color of the roof?

A  Dark brown.

Q  Was the substance of the roof different than the body of the car?

A  Yes.

Q  In what respect?

A  The body of the car was lighter than the roof.

Q  What kind of top was that?

A  Vinyl, full vinyl.

Q  What did you do with your car on August 15, 1979?

A  I took it to Bernicker Cadillac for service.

Q  I would just ask you to keep your voice up so the jurors can hear you, so Miss Weldon, who is farthest over here, and Mrs. Weikel can hear you.

    MR. WILLIAMSON: If any jurors cannot hear a witness, please let us know.  Okay?  Can you all hear the witness?

    (All jurors indicated assent.)

BY MR. WILLIAMSON:

Q  Now, after you took it to Bernicker Cadillac on August 15, 1979, did anything unusual happen that day that you remember with respect to your Cadillac?

A  Yes.  About three hours later I received a call from the service manager at Bernicker Cadillac, stating that my car was not there.

Q  And had you taken your car away from that service station.

A  No, I did not.

Q  As a result of receiving this information on August 15, 1979, what did you do?  Did you communicate with anybody?

A Yes. The Lower Merion Police Department called me and told me that my car had been reported stolen from Bernicker Cadillac.

Q Now, what did you do that day with respect to receiving this information?

A I called my insurance company and reported it.

Q Did you have occasion to ever see your automobile again?

A The next time I saw it was August 21st at the Abington Police Department.

MR. WILLIAMSON: I ask that this be marked Commonwealth Exhibit 1.

(The Court Reporter marked a photo as Exhibit C–1.)

BY MR. WILLIAMSON:

Q I show you, Mr. Spaddy, what has been marked for identification as Commonwealth Exhibit C–1, and ask you if you recognize what is depicted in that photograph.

A Yes, I do.

Q What is it?

Will you tell the jury, please.

A A 1978 four door sedan Cadillac, beige in body, dark brown top.

Q Do you know whose car that is?

A This is the same car that I saw at the police station, so it is my car. It was my car.

MR. WILLIAMSON: Will you please mark these exhibits C–2 and C–3.

(The Court Reporter marked a license tag as Exhibit C–2, and an automobile registration card as C–3.)

BY MR. WILLIAMSON:

Q Mr. Spaddy, I show you what has been marked for identification as Exhibit C–2, this object right here. Do you recognize it?

A Yes. That is the license plate from my car.

Q What is the plate number?

A   OL9476.

Q   I also show you what has been marked for identification as Commonwealth Exhibit C–3.   Do you recognize that?

A   That's my owner's card with my signature.

Q   Does the license number of the owner's card, is that indicated on here?

A   Yes.

Q   Can you read it?

A   OL9476.

Q   And what is the description of the owner's card, for what vehicle, can you read that?

A   1978 Cadillac sedan.

Q   And is there a vehicle manufacturer's number that appears on there?

A   Yes.

Q   Would you read that, if you can?

A   6D69S8E672289.

Q   Thank you.

   What was the condition of your vehicle when you saw it that day, in the Abington Township Police Department?

A   Very demolished.

Q   Did you give permission to Mr. Turner to operate your vehicle on August 15th.

A   I gave permission to no one.

Q   To operate your vehicle on August 15, 1979, other than the service people.

A   Other than the service people, no one.

   MR. WILLIAMSON:  Cross-examine."

   Trial Transcript at 12–16.

Additionally, the trial court at the request of the prosecution instructed the jury on the evidence of the stolen car in the following manner:

   "I also wish to mention to you as a cautionary instruction that this Defendant is not charged with having stolen any

car. There was evidence which indicated that the car which was involved in the accident was stolen, and it is possible for you to draw an inference that that car was taken by some person for an improper purpose. But you have no charge before you. You have no evidence before you indicating that this Defendant stole a car." [6]

Trial Transcript at 199.

As a general rule, the prosecution cannot introduce testimony from which the jury reasonably could infer that the defendant has been engaged in criminal activity not charged in the indictment or information for which the defendant is being tried. See *Commonwealth v. Lee,* 297 Pa.Super. 216, 443 A.2d 804 (1982). The special circumstances justifying exceptions to the general rule exist when the evidence of unrelated criminal activity tends to establish the following:

" '(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity [*] of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.' *Commonwealth v. Peterson,* supra, 453 Pa. [187] at 197–198, 307 A.2d [264] 269."

[*] In *McCormick,* supra at 448, the commentator states that the need to prove identity alone is usually not sufficient to permit the introduction into evidence of other crimes. Instead, evidence of other crimes establishing a defendant's identity is generally admitted when it is interrelated with one of the other exceptions specified above. The exceptions most frequently resorted to for this purpose are motive, a common scheme or plan, and an identical *modus operandi.* See also *Commonwealth v. Patterson,* 247 Pa.Super. 199, 372 A.2d 7 (1977) (Dissenting Opinion by HOFFMAN, J. in which JACOBS and SPAETH, JJ. joined), allocatur granted.

6. The court stated at the beginning of the trial that two informations which were mentioned (i.e., theft by receiving stolen property involving a car and unauthorized use of a motor vehicle) had been withdrawn. Trial Transcript at 5.

*Commonwealth v. Lee,* 297 Pa.Super. at 225, 443 A.2d at 808.

In this connection, a sixth exception has been included. That is, evidence of a crime independent of the crime for which the accused is being tried is admissible "where the crime was committed to conceal the commission of the crime on trial or to escape its consequences." *Commonwealth v. Terrell,* 234 Pa.Super. 325, 329, 339 A.2d 112, 114 (1975). More specifically, we have recognized this principle, namely where "evidence of the theft of a car to effectuate flight and the transportation of sixteen year old girl over a state line during that flight [was] admissible at the trial of the crime from which the defendant was fleeing". *Commonwealth v. Irons,* 230 Pa.Super. 56, 64, 326 A.2d 488, 492 (1974).

■ Likewise, in the instant case, we conclude that evidence of using a stolen vehicle in order to commit the burglary was admissible because "the crime [of stealing a vehicle] was committed to conceal the commission of the crime on trial or to escape its consequences". *Commonwealth v. Terrell,* 234 Pa.Super. at 329, 339 A.2d at 114. See generally McCormick, Evidence § 190 at 451 (2d ed. 1972).

Appellant also contends that reversible error occurred when the prosecution reminded the jury that the charges of theft with respect to the automobile had been withdrawn and that they were not to consider that evidence. Appellant also asserts that the "District Attorney pointed out to the jury that appellant was the individual who stole the automobile". Brief for Appellant at 14. However, the prosecution contends that "no argument was made to the jury that this defendant had stolen a motor vehicle." Brief for the Prosecution at 12.

■ Before resolving the merits of appellant's argument, we first must decide whether the issue has been preserved

for appeal. In this case, the closing argument of the prosecution is not record. Where the challenged remark has not been recorded, we have said the following:

"[I]t is well settled that *any objection must be made during the argument* so that the challenged remarks may be placed in the record at or about the time they are made. *Commonwealth v. Perkins,* 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Adkins,* 468 Pa. 465, 364 A.2d 287 (1976); *Commonwealth v. Kollock,* 246 Pa.Super. 16, 369 A.2d 787 (1977). The purpose of this requirement is to ensure an accurate record on appeal. *Commonwealth v. Perkins,* supra. 'Otherwise, the recollection of both counsel and the court at the *conclusion* of the argument may differ and thereby result in unnecessary disputes.' *Commonwealth v. Adkins,* surpa [468 Pa.] at 472, 364 A.2d at 291." *Commonwealth v. Leymeister,* 285 Pa.Super. 539, 541, 428 A.2d 176, 178 (1981) (Emphasis added).

Of course, where there is no dispute as to the content of the remark, the issue has been preserved for appeal. *Commonwealth v. Balazick,* 278 Pa.Super. 17, 19, 419 A.2d 1333, 1334 (1980). However, in the instant case, defense counsel waited until the end of the prosecutor's closing argument before objecting and moving for a mistrial and the recollection of both counsel differs as to what was said. Under these circumstances, this court is not apprised of the substance of the challenged remark. Because defense counsel has the "obligation of setting forth in context and with sufficient illumination the statements he deemed offensive and prejudicial so an appellate court could make an intelligent judgment as to the nature and possible effect of the comments", counsel's failure to insure such a record renders the issue waived. *Commonwealth v. Leymeister,* 285 Pa.Super. at 541, 428 A.2d at 178.

In any event, even if the issue is not waived, we note that the trial court stated in its opinion that "[n]ot only did the prosecuting attorney stress that no accusation of theft was

made (N.T. 180), but the Court also gave explicit cautionary instructions on the limited nature of the proper uses of that testimony." Trial Court Opinion at 7. Under these circumstances, reversible error did not occur during the closing argument.

With respect to the other issues raised, the trial court adequately addressed these issues in its opinion. Hence, there is no need to elaborate.

Judgment of sentence is affirmed.

BROSKY, J., concurs in the result.