J-S50005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHANTI MONTGOMERY | : | |
| | : | |
| Appellant | : | No. 1373 WDA 2018 |

Appeal from the PCRA Order Entered September 13, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003231-2015

\*\*\*\*\*

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHANTI  MONTGOMERY | : | |
| | : | |
| Appellant | : | No. 1376 WDA 2018 |

Appeal from the PCRA Order Entered September 13, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003483-2013

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 25, 2019**

_____

[*] Retired Senior Judge assigned to the Superior Court.

Ashanti Montgomery appeals from the September 13, 2018 order[1], entered in the Court of Common Pleas of Allegheny County, denying his petition under the Post Conviction Relief Act[2] (PCRA). Upon careful review, we affirm.

The facts of this case are as follows:

[O]n January 10, 2013, [Montgomery] was hanging out with his cousin, Marshall Addison[,] when the two decided to go buy marijuana from Addison's dealer. While Addison parked the car, [Montgomery] walked ahead and Addison lost sight of him. When he finally caught up to [Montgomery] at the intersection of Beltzhoover Avenue and Climax Street, [Montgomery] had a gun pointed at Deondre Pace. Pace's companion, Johavian Everett, was urging [Montgomery] to calm down, but [Montgomery] fired a shot. When Pace fell to the ground, [Montgomery] moved over him and fired additional shots. Pace suffered a total of three (3) gunshot wounds to his upper chest, his abdomen and arm and was later pronounced dead at Mercy Hospital. It was later discovered that [Montgomery] and Pace had an ongoing dispute over a gun exchange that occurred the previous year. The two had made an agreement to trade a shotgun and a pistol, but Pace had given [Montgomery] a starter gun instead.[3]

Three (3) days later, on January 13, 2013, [Montgomery] was with his friends J.R. and "Rell" at his apartment building on North Negley Avenue in the East Liberty section of the City of Pittsburgh, when he encountered another building resident, Lou Auer, who was selling pills. J.R. left and returned with some crack, which they gave Auer in exchange for his pills. Later that evening

---

[1] Montgomery filed separate notices of appeal, pursuant to **Commonwealth v. Walker,** 185 A.3d 969 (Pa. 2018). We consolidated his appeal *sua sponte* by *per curiam* order dated October 9, 2018. Order, 10/9/18, at 1.

[2] 42 Pa.C.S.A. §§ 9541-9546.

[3] **See** N.T. Trial, Vol. 4, at 182 (Addison stating, "[Montgomery] discovered that it wasn't a real firearm. He [called] me and told me that it wasn't a real firearm.").

[Montgomery]'s girlfriend called him to say that a man was banging on the apartment door screaming "you burned me." [Montgomery] returned to the apartment with his friends, got the gun he used to kill Deondre Pace from the closet and then began to walk around the apartment complex looking for the man. Eventually they encountered Auer in the courtyard of the complex. Auer pulled out a knife and lunged at J.R. [Montgomery] pulled his gun and told Auer to drop the knife. When Auer swung again at J.R., [Montgomery] shot him in the chest. [Montgomery] was observed holding a gun and then fleeing by a resident of the building. K9 Officer [Glen] Bogert was called to the scene and led officers to the gun, which was hidden nearby in a pile of leaves. Its serial numbers had been obliterated. Forensic testing determined that the gun found by K9 Officer Bogert fired the fatal shots in both killings. Shortly after the shooting, [Montgomery] called Addison and told him he had "just caught another body," meaning that he had killed another person, and detailed the circumstances which led to the killing.

[Montgomery] was subsequently arrested and gave a recorded statement confessing to both killings.

Trial Court Opinion, 11/09/16, at 1–4.

At trial, Montgomery's counsel, Owen M. Seman, Esquire, called forensic psychologist, Alice Applegate, Ph.D., who diagnosed Montgomery with, among other things, schizophrenia, autism spectrum disorders, developmental trauma disorders, adjustment disorders with anxiety, and unspecified neurocognitive disorders. N.T. Trial, Vol. 4, at 114. Attorney Seman offered Doctor Applegate's testimony to undermine the Commonwealth's assertion that Montgomery voluntarily confessed to both killings. Following Attorney Seman's direct examination of Doctor Applegate, Assistant District Attorney Christopher Stone, Esquire, moved to strike the entirety of Doctor Applegate's testimony, arguing she had not opined as to the voluntariness of

Montgomery's confession. The court denied Attorney Stone's motion. ***See***

***id.*** at 124, 127.

Attorney Stone renewed his motion to strike after the following

exchange with Doctor Applegate:

> [Attorney Stone]: Okay. Now ma'am, I take it that straight-forwardly speaking you are saying that these police officers got a statement from [Montgomery], and they obtained it in a condition where it was involuntary; is that right? Are you saying that they involuntarily obtained his statement?
>
> [Doctor Applegate]: I am saying that [Montgomery's] voluntary statements are not always reliable statements. In other words –
>
> [Attorney Stone]: That's not responsive to my question, ma'am.
>
> [Doctor Applegate]: Okay.
>
> [Attorney Stone]: Did these police officers obtain the statement from [Montgomery] voluntarily?
>
> [Doctor Applegate]: Yes.

N.T. Trial, Vol. 4, at 126. Following this exchange, Attorney Stone, Attorney

Seman, and the Honorable Donna Jo McDaniel had a sidebar conversation to

discuss the motion, during which Attorney Seman voiced his opposition and

arguments against striking the entire testimony. Ultimately, Judge McDaniel

granted the Commonwealth's motion.

On November 10, 2015, a jury convicted Montgomery of two counts of murder in the first degree,[4] one count of criminal conspiracy,[5] two counts of possession of a firearm without a license,[6] and one count of possession of a firearm with manufacturer number altered.[7] On February 3, 2016, the court sentenced Montgomery to two concurrent life terms of imprisonment. Following sentencing, Montgomery's counsel moved to withdraw. The court granted counsel's motion the same day, and appointed Todd Mosser, Esquire, to represent Montgomery on post-sentence motions and direct appeal.

On May 8, 2017, Montgomery voluntarily discontinued his direct appeal to pursue the instant PCRA petition through Attorney Mosser.[8] On May 3, 2018, Montgomery filed a timely petition for relief under the PCRA. On August 13, 2018, the PCRA court issued a notice of intent to dismiss Montgomery's petition pursuant to Pa.R.Crim.P. 907. On September 13, 2018, the PCRA court dismissed Montgomery's petition without a hearing. This timely appeal followed.

_____

[4] 18 Pa.C.S.A. § 2501(a).

[5] 18 Pa.C.S.A. § 903(a)(1).

[6] 18 Pa.C.S.A. § 6106.

[7] 18 Pa.C.S.A. § 6110.2.

[8] Ineffectiveness claims, except under limited circumstances not at issue, are deferred to PCRA review. *Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013).

Montgomery raises the following claims:

1. The PCRA Court erred when it dismissed [Montgomery's] claim that prior counsel was ineffective for failing to properly object to the trial court's decision to strike Doctor Applegate's testimony without an opportunity to clear up her confusion on re-direct.

2. The PCRA Court abused its discretion [by] dismissing [Montgomery's] petition without an evidentiary hearing where prior counsel was ineffective for failing to pursue a diminished capacity defense.

Brief of Appellant, at 2.

Our standard of review is well-settled:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's rulings if it is supported by evidence of record and is free of legal error. This court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record.

*Commonwealth v. Rykard,* 55 A.3d 1177, 1183 (Pa. Super. 2012) (citations omitted). The PCRA court may choose to dismiss a petition without a hearing "if it has thoroughly reviewed the claims presented and determined that they are utterly without support in the record." *Commonwealth v. Gaskins*, 692 A.2d 224, 226 (Pa. Super 1997); *see* Pa.R.Crim.P. 907.

To succeed on his ineffective assistance of counsel claim, an appellant must prove: (1) the underlying claim has arguable merit; (2) the counsel had no reasonable basis for his act or omission; and (3) the appellant suffered prejudice as a result of counsel's error. *Commonwealth v. Montalvo*, 114

- 6 -

A.3d 401, 409-19 (Pa. 2015). "Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." ***Commonwealth v. Pierce***, 567 Pa. 186, 203. Failure to prove any prong will defeat an ineffectiveness claim. ***Commonwealth v. Koehler,*** 36 A.3d 121, 132 (Pa. 2012). Trial counsel is presumed to be effective, and the burden of proving ineffectiveness of counsel rests on the appellant. ***Commonwealth v. Wilson***, 672 A.2d 293, 298 (Pa. 1996).

Montgomery first claims that Attorney Seman provided ineffective assistance by failing to object to the trial court's decision to strike the entirety of Doctor Applegate's testimony. The PCRA court rejected this claim, finding the record clearly indicated that Attorney Seman raised his timely objection. Pa.R.A.P 1925(a) opinion, 1/15/19, at 3. We agree.

Here, Attorney Seman did, in fact, protest Judge McDaniel's ruling to strike Doctor Applegate's testimony. On direct-examination, Attorney Stone initially moved to strike Doctor Applegate's testimony, stating, "[s]he never clearly expressed an opinion on voluntariness, which would be the only issue for which this testimony would be relevant." N.T. Trial, Vol. 4, at 124. Attorney Seman disputed this motion, arguing that she in fact did express her opinion. ***Id.*** at 125. Judge McDaniel agreed with Attorney Seman, and stated that she will allow the jury to decide. ***Id.***

On cross-examination, Doctor Applegate stated that Montgomery gave his statement to the police voluntarily. Attorney Stone then renewed his objection to strike her testimony, after which the following sidebar conversation occurred:

[Attorney Stone]: She can't – there is no relevant reason for her to have testimony –

[The Court]: This is all about voluntariness of the statement . . . No. She can't—she can't recant, she is classified as an expert. Okay.

. . .

[The Court]: . . . I can't let it slide, if she says that his statement was voluntary or not involuntary. It was actually what she said.

[Attorney Seman]: I am not sure she is really comprehending the aspect of it I mean, the voluntariness is, you know – the question that I asked was did he understand what he was doing.

[The Court]: She said –

[Attorney Seman]: She said no.

. . .

[Attorney Seman]: . . . [H]is psychological make[-]up is one of the aspects a jury is supposed to consider in voluntariness. I am not going to argue to the jury that they did something and that it was coercive in nature just because of his psychological makeup.

. . .

[Attorney Seman]: Look at the second alternative there, it goes over everything that she is talking about there . . . Judge, looking at the instructions I still think his psychological make[-]up comes into play. Obviously Mr. Stone can argue to the jury that hey, she answered it in the affirmative.

> [The Court]: . . . I know you are in a bad spot, I don't know what to say except I do agree that it needs to be stricken.

N.T. Trial, Vol. 4, at 127–31. This conversation clearly shows Attorney Seman opposing the motion. Attorney Seman argued, "his psychological make[-]up is one of the aspects a jury is supposed to consider in voluntariness [.]" *Id.* at 127–28. In addition, Attorney Seman firmly stated to the judge, "she said no" when Doctor Applegate was asked if Montgomery "understood what he was doing" when giving the statements to police. *Id.* at 127. Though Attorney Seman did not expressly say "I object" or "objection," he timely opposed both of Attorney Stone's motions to strike. *See Commonwealth v. Turner*, 450 A.2d 9, 11 (Pa. Super. 1982) (stating appellant's attorney sufficiently challenged admissibility of expert testimony though he did not "utter the magic words, 'I object.'").

The record clearly demonstrates Attorney Seman's timely opposition of, and arguments against, the motion to strike Doctor Applegate's testimony. *Rykard*, *supra* at 1183. Accordingly, the PCRA court properly denied this claim as lacking arguable merit. *Montalvo*, *supra* at 409.

Montgomery next claims that trial counsel was ineffective for failing to present a diminished capacity defense through Doctor Applegate. The PCRA Court denied this claim, reasoning that counsel's strategic decision, although unsuccessful, does not constitute ineffective assistance of counsel. Pa.R.A.P. 1925(a) Opinion, 1/15/19, at 3. The PCRA court further stated that the pursuit

of a diminished capacity defense would have been improper given the lack of expert opinion. *Id.*

As support for Montgomery's conviction of first-degree murder of Pace, the Commonwealth presented testimony from two witnesses who were present for the shooting, as well as Montgomery's statement to the police. N.T. Trial, Vol. 3, at 121-39, 147-75. In Montgomery's statement, he admitted to shooting Pace. *Id.* at 204. He also stated that Pace's companion at the time, Everett, had pulled out a gun first, at which point Montgomery pulled out his own gun and started firing. N.T. Trial, Vol. 4, at 204, 216.

In light of these facts, Attorney Seman chose to pursue a theory of self-defense. *Id.* at 328-39, 333. An attorney's strategic decision to pursue acquittal rather than a diminished capacity defense does not constitute ineffective assistance of counsel if there is a reasonable basis for the strategy. *Commonwealth v. Spotz,* 896 A.2d 1191, 1218 (Pa. 2006). Further, it is well-settled that a strategy proven unsuccessful does not necessarily render it unreasonable. *Id.* at 1235. Here, Attorney Seman had a reasonable basis to pursue a self-defense theory. Montgomery stated to the police that Addison pulled out a gun first, and it was at that point that Montgomery pulled out his own gun to start firing. Given this statement, it was not unreasonable for Attorney Seman to pursue such a defense. Though Attorney Seman's self-defense theory was unsuccessful, he was not ineffective for pursuing it. *Id.*

Moreover, a diminished capacity defense requires extensive psychiatric testimony "establishing a defendant suffered from one or more mental disorders which prevented him from formulating the specific intent to kill." **Commonwealth v. Cuevas**, 832 A.2d 388, 393 (Pa. 2003). The defense is extremely limited, and courts only admit evidence if it tends to prove that the appellant did not premeditate or deliberate in committing the murder. **Commonwealth v. Cain**, 503 A.2d 959, 962 (Pa. Super. 1986). The evidence "must provide insight as to the defendant's mental state at the time of the offense," which is the only relevant time for a diminished capacity defense. **Commonwealth v. Mason,** 130 A.3d 601, 631 (Pa. 2015). Evidence that the defendant "lacked the ability to control his or her actions or acted impulsively is irrelevant to the specific intent to kill, and is thus not admissible to support a diminished capacity defense." **Id.** Further, "diagnosis with a personality disorder does not suffice to establish diminished capacity." **Id.**

Doctor Applegate's psychiatric report does not indicate that Montgomery suffered a mental disorder that prevented him from formulating the specific intent to kill at the time of the murders. Forensic Psychology Evaluation, 2/14/14, at 34–35. In fact, Doctor Applegate's report stated Montgomery did not remember anything about the shooting as he ran away from the scene. **Id.** at 35. This evidence does not speak to Montgomery's mental state at the time of the crime. **See Mason,** 130 A.3d at 631. There is no testimony or

evidence in the report to demonstrate that Montgomery did not premeditate or deliberate in committing these murders. *See Cain*, 503 A.2d at 962. Thus, counsel properly chose to pursue self-defense over a diminished capacity defense.

Consequently, we find the PCRA court's determinations are supported by the evidence of the record, and affirm the PCRA court's finding that Montgomery failed to prove counsel's ineffectiveness. *Montalvo, supra* at 409.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/25/2019